[No. G041255. Fourth Dist., Div. Three. May 26, 2009.]

YAMAHA MOTOR COMPANY, LTD., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JACK R. CONNORS, a Minor, etc., et al., Real Parties in Interest.

## COUNSEL

Jones Day, Thomas R. Malcolm, Frederick L. McKnight, Erik K. Swanholt, Brian M. Hoffstadt; Bowman & Brooke, Paul G. Cereghini, Robert K. Miller, Stephen J. Kelley and Renee S. Konigsberg for Petitioner.

O'Melveny & Myers, Thomas M. Riordan and Katherine A. Lindsey for Association of International Automobile Manufacturers, Inc., as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Engstrom, Lipscomb & Lack, Walter J. Lack, Gary A. Praglin, Gregory P. Waters and Richard P. Kinnan for Real Parties in Interest.

## OPINION

**SILLS, P. J.**—This court issued an OSC (order to show cause) in response to this petition for writ of mandate because it presents an issue of some public importance that has not yet been squarely faced by a California state court, in a published opinion, in this particular context: The question of whether a Japanese manufacturer can be served under California law simply by serving the Japanese manufacturer's American subsidiary. The trial court ruled that a Japanese manufacturer could indeed be validly served that way. The method just seemed too easy a way to get around the Hague Service Convention and we scheduled an OSC on the petition to give us the chance to study the issue.

On review, however, it turns out that, yes, it really is that easy.[1] And not only that, there is nothing *this* court, as a matter of California common law, can do about it. We are a court under authority, and there is a nonoverruled, nondistinguishable California Supreme Court case, *Cosper v. Smith & Wesson Arms Co.* (1959) 53 Cal.2d 77 [346 P.2d 409], that makes service on the California representative of a foreign parent valid—that is, valid as to the foreign parent—under California law. And not only that, but there is a 1988 federal United States Supreme Court case, *Volkswagenwerk Aktiengesellschaft v. Schlunk, supra*, 486 U.S. 694 (*Schlunk*), that says when service is valid under state law on the American subsidiary of a foreign manufacturer, there is no need to serve papers in accord with the Hague Service Convention. Accordingly, we have no choice but to deny the petition for writ of mandate.

## I. BACKGROUND

The plaintiff was allegedly injured when he was out riding on a 2005 Yamaha Rhino on his 12th birthday. His complaint includes two defendants which we will call "Yamaha-Japan"[2] and "Yamaha-America."[3]

---

[1] Easy is not necessarily better. As Justice O'Connor pointed out in *Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694 [100 L.Ed.2d 722, 108 S.Ct. 2104], there are good reasons to do it the hard way: "Those who eschew [the Hague Service Convention's] procedures risk discovering that the forum's internal law required transmittal of documents for service abroad, and that the Convention therefore provided the exclusive means of valid service. In addition, parties that comply with the Convention ultimately may find it easier to enforce their judgments abroad. See Westin, Enforcing Foreign Commercial Judgments and Arbitral Awards in the United States, West Germany, and England, Law & Policy Int'l Bus. 325, 340–341 (1987). For these reasons, we anticipate that parties may resort to the Convention voluntarily, even in cases that fall outside the scope of its mandatory application." (*Id.* at p. 706.)

[2] Petitioner Yamaha Motor Company, Ltd., specially appearing to quash service of process.

[3] Defendant Yamaha Motor Corporation USA. Another Yamaha entity, Yamaha Motor Manufacturing Corporation of America, is also a defendant.

Plaintiff served Yamaha-America and also sought to serve Yamaha-Japan by serving Yamaha-America through Yamaha-America's agent for service of process. His theory was (and is) that Yamaha-America is Yamaha-Japan's "general manager in this state."

Yamaha-Japan filed a motion to quash service, arguing that Yamaha-America is only a subsidiary of Yamaha-Japan, not Yamaha-Japan's general manager in California, and therefore service should have been made through the Hague Service Convention. (At the very least, serving Yamaha-Japan through the Hague Service Convention would have meant incurring the expense of translating the pleadings into Japanese. (See *Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1049 [12 Cal.Rptr.2d 861] ["Petitioner correctly points out that the service is also flawed by the omission of a Japanese translation. Plaintiff admits that the Central Authority for Japan requires that documents served under the convention be accompanied by a Japanese translation."].))

Here are the undisputed facts about Yamaha-America's relationship to Yamaha-Japan: Yamaha-America is Yamaha-Japan's wholly owned domestic subsidiary in the United States. Yamaha-America's principal business is to act as the exclusive importer and distributor of Yamaha vehicles, including the Rhino in this case, manufactured by Yamaha-Japan. Yamaha-America provides the warranty and owner manuals for Yamaha vehicles. Yamaha-America conducts testing, including suitability testing, for Yamaha vehicles. Yamaha-America provides marketing for Yamaha vehicles and receives all customer complaints and accident reports for the United States involving Yamaha vehicles. Finally, Yamaha-Japan's 2007 annual report describes Yamaha-America as Yamaha-Japan's "Regional Headquarters for North America."

The trial court denied the motion, reasoning that Yamaha-America is Yamaha-Japan's general manager in this state. Yamaha-Japan then filed this petition for writ of mandate, and it is supported by a brief from the Association of International Automobile Manufacturers.

## II. DISCUSSION

### A. Federal Law Makes the Validity of the Service Dependent on State Law

Rarely do lower courts have a precedent from a higher court as close on the facts as the United States Supreme Court opinion in *Schlunk* to

the case before us. In *Schlunk*, a plaintiff sued both Volkswagen-America ("Volkswagen of America" or "VWoA" as described in the opinion) and Volkswagen-Germany ("Volkswagen Aktiengesellschaft" or "VWAG" as described in the opinion) in Illinois state court for defects in the automobile that contributed to the plaintiff's parents' deaths in an accident. More specifically, the plaintiff successfully served Volkswagen-America, got back an answer denying that Volkswagen-America had designed or assembled the car in question, so he then amended his complaint to add Volkswagen-Germany as a defendant. The plaintiff then "attempted" to serve the amended complaint on Volkswagen-Germany by serving Volkswagen-America as Volkswagen-Germany's "agent." (*Schlunk, supra*, 486 U.S. at pp. 696–697.)

Volkswagen-Germany made a special and limited appearance to quash service. The Illinois state trial court denied the motion on the ground that, under Illinois state law, the fact that Volkswagen-America and Volkswagen-Germany were so "closely related" that Volkswagen-America was Volkswagen-Germany's "agent for service of process as a matter of law," even though Volkswagen-Germany had not appointed Volkswagen-America as its agent. (*Schlunk, supra*, 486 U.S. at p. 697.) The Illinois intermediate appellate court agreed, holding that, under Illinois law, Volkswagen-America was Volkswagen-Germany's involuntary agent for service of process. It further held that serving Volkswagen-Germany by serving Volkswagen-America did not violate the Hague Service Convention. (486 U.S. at p. 697.) When the Illinois Supreme Court refused to take the case, Volkswagen-Germany petitioned the United States Supreme Court, and it granted certiorari to address the issue, which the federal high court noted had "given rise to disagreement among the lower courts." (*Id.* at pp. 697–698.)

█ The federal Supreme Court framed the issue as whether "an attempt to serve process on a foreign corporation by serving its domestic subsidiary which, under state law, is the foreign corporation's involuntary agent for service of process" was "compatible with the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention)." The federal high court then agreed with the Illinois state courts and answered: Yes. (*Schlunk, supra*, 486 U.S. at pp. 696 [the issue], 707–708 [the answer].)

The Hague Service Convention applies "where there is"—and this is the precise language from the treaty—"occasion to transmit a judicial or extrajudicial document for service abroad."[4]

Now, one might think that, in any case where a foreign person had an agent for service of process in another country, there would *still* be "occasion to transmit" the complaint, which is a "judicial document," to the foreign person in his, her or its home country—after all, he, she or it is going to have to read the document there, so the convention should still apply.

No. The United States Supreme Court rejected that precise argument in *Schlunk*, reasoning that if service, under state law, did not *necessarily require* transmittal of the relevant documents, the Hague Service Convention simply was not implicated. Because, under Illinois law, there was no necessity to send any documents abroad to complete service (even though, as a practical matter, they would be sent anyway), the convention did not apply, and the service on Volkswagen-America as agent for Volkswagen-Germany was "proper."[5]

If California law were the same as Illinois law, we could end this opinion here. We have a United States Supreme Court case construing federal law, on all fours. But, of course, the two states do not have identical statutes and

---

[4] Article 1 of the treaty is short, and can be quoted in its entirety: "Article 1 [¶] The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. [¶] This Convention shall not apply where the address of the person to be served with the document is not known." (Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 362; 1969 WL 97765 at p. 1.)

[5] Here is the relevant text from *Schlunk*:

"VWAG explains that, as a practical matter, VWoA was certain to transmit the complaint to Germany to notify VWAG of the litigation. . . . VWAG argues that, because of this notice requirement, every case involving service on a foreign national will present an 'occasion to transmit a judicial . . . document for service abroad' within the meaning of Article 1. . . . VWAG emphasizes that in this case, the Appellate Court upheld service only after determining that 'the relationship between VWAG and VWoA is so close that it is certain that VWAG "was fully apprised of the pendency of the action" by delivery of the summons to VWoA.' . . .

"We reject this argument. Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications. Whatever internal, private communications take place between the agent and a foreign principal are beyond the concerns of this case. *The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service.* And, contrary to VWAG's assertion, the Due Process Clause does not require an official transmittal of documents abroad every time there is service on a foreign national. *Applying this analysis, we conclude that this case does not present an occasion to transmit a judicial document for service abroad within the meaning of Article 1. Therefore the Hague Service Convention does not apply, and service was proper.*" (*Schlunk, supra*, 486 U.S. at pp. 707–708, citations omitted, italics added.)

common law construing those statutes, so we now turn to whether California law, like Illinois law in *Schlunk*, provides for proper service of "process on a foreign corporation by serving its domestic subsidiary which, under state law, is the foreign corporation's involuntary agent for service of process." (*Schlunk, supra*, 486 U.S. at p. 696.) As we shall see, the answer is yes.

### B.    California Law Allows Service on a Foreign Corporation by Serving Its Domestic Subsidiary

#### 1.    *The Relevant Statutes*

■    The first of California's service of process statutes is section 413.10 of the Code of Civil Procedure, which expressly contemplates that the rules governing summonses "are subject to" the provisions of the Hague Service Convention.[6]

We pause for a moment to note that "subject to" does not mean "pursuant to the rules of." If the Legislature wanted all service on foreign nationals to be pursuant to the procedures of the Hague Service Convention, it could have said so. It didn't; it merely recognized that treaties trump *conflicting* state law. (U.S. Const., art. VI; e.g., *Mitsubishi Materials Corp. v. Superior Court* (2003) 113 Cal.App.4th 55 [6 Cal.Rptr.3d 159] [state law allowing former POW's to sue successors of Japanese companies who exploited them as slave labor in World War II conflicted with treaty that ended hostilities between the two countries].)

Code of Civil Procedure section 416.10 governs how to serve corporations. It says that service on a corporation may be made if "authorized by any provision in Section . . . 2110 . . . of the Corporations Code" or "Sections 6500

---

[6] The statute provides:

"Except as otherwise provided by statute, a summons shall be served on a person:

"(a) Within this state, as provided in this chapter.

"(b) Outside this state but within the United States, as provided in this chapter or as prescribed by the law of the place where the person is served.

"(c) Outside the United States, as provided in this chapter or as directed by the court in which the action is pending, or, if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served or as directed by the foreign authority in response to a letter rogatory. These rules are subject to the provisions of the Convention on the 'Service Abroad of Judicial and Extrajudicial Documents' in Civil or Commercial Matters (Hague Service Convention)." (Code Civ. Proc., § 413.10.)

to 6504, inclusive, of the Corporations Code, as in effect on December 31, 1976, with respect to corporations to which they remain applicable."[7]

Corporations Code section 2110 says that delivery by hand of a copy of any process to the "general manager in this state" of a foreign corporation "shall constitute valid service on the corporation."[8]

We pause again to recognize a nonissue for what it is: Corporations Code section 6500 was repealed in 1975 (see Stats. 1975, ch. 682, § 6, p. 1516), while Corporations Code section 2110 was added in the same legislation that repealed Corporations Code section 6500 (see Stats. 1975, ch. 682, § 7, p. 1516), and which also amended section 416.10 of the Code of Civil Procedure to read as it reads today. The replacement of Corporations Code section 6500 with Corporations Code section 2110 was part of a wholesale recodification of the Corporations Code. However, these changes *did not become effective until January 1, 1977.* (Stats. 1975, ch. 682, § 7, pp. 1516, 1622.)

That is, under section 416.10 of the Code of Civil Procedure, as it stands today, a summons may be served on a corporation "by delivering a copy of the summons and the complaint" to "the person designated as agent for service of process as provided by . . . Section[] 6500 . . . as in effect on December 31, 1976."

Which is all by way of saying that an authoritative construction of Corporations Code former section 6500 by a 1959 decision of our state's

---

[7] Subdivisions (a) and (d) of the statute provide:

"A summons may be served on a corporation by delivering a copy of the summons and the complaint by any of the following methods:

"(a) To the person designated as agent for service of process as provided by any provision in Section 202, 1502, 2105, or 2107 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code, as in effect on December 31, 1976, with respect to corporations to which they remain applicable). [¶] . . . [¶]

"(d) If authorized by any provision in Section 1701, 1702, 2110, or 2111 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code, as in effect on December 31, 1976, with respect to corporations to which they remain applicable), as provided by that provision." (Code Civ. Proc., § 416.10.)

[8] The text of the statute is: "Delivery by hand of a copy of any process against a foreign corporation (a) to any officer of the corporation or its general manager in this state, or if the corporation is a bank to a cashier or an assistant cashier, (b) to any natural person designated by it as agent for the service of process, or (c), if the corporation has designated a corporate agent, to any person named in the latest certificate of the corporate agent filed pursuant to Section 1505 shall constitute valid service on the corporation." (Corp. Code, § 2110.)

highest court is *still* binding on this intermediate appellate court. There is no basis by which we may tease out an intervening change in the statutory law. (Particularly when one realizes that the 1975 legislation was enacted in light of the 1969 Hague Service Convention. If, in 1975, the Legislature wanted to change the method of service provided for by Corp. Code, former § 6500 as previously construed by California courts it had the perfect chance to do so; it didn't.)

## 2. *The Relevant Supreme Court Decision*

In *Cosper v. Smith & Wesson Arms Co., supra*, 53 Cal.2d 77 (*Cosper*), a police officer whose revolver exploded on him sued the Massachusetts corporation that manufactured the firearm. The Massachusetts corporation, however, had no agents, salesmen, or other employees in California. (*Id.* at p. 80.) But it did have a contract with a California representative to promote, on a " 'non-exclusive basis' " the sale of its products on the West Coast. Basically, he was a sporting goods salesman. (*Ibid.*) The Supreme Court held that service on this representative *was* sufficient to serve the Massachusetts corporation because the representative was the " 'general manager in this State.' " (*Id.* at pp. 79, 83–84.)

■ To be sure, the bulk of the *Cosper* decision is devoted to the due process minimum contacts problem on which first-year civil procedure professors usually spend too much time. (The court held that, yes, Smith & Wesson had done enough business in California that it would not be a denial of due process to have the firm sued in this state.) Even so, the court also clearly held that service on the sales representative was valid service on the corporation itself, reasoning that the representative had "ample regular contact" so that it was " 'reasonably certain' " that the representative would apprise the manufacturer of the service. (*Cosper, supra*, 53 Cal.2d at p. 83.)[9]

---

[9] The Supreme Court's reasoning in *Cosper* on the service issue is set out in one long paragraph, which (minus citations) we can readily cram into this footnote: "The second consideration in testing the validity of service under section 6500 of the Corporations Code [the first consideration went to the due process concern of whether the corporation was really " 'doing business in this State' " (*Cosper, supra*, 53 Cal.2d at p. 82)] is whether the person served is within the statutory designation—here 'the general manager in this State' for Smith and Wesson. In this regard, it has been said that 'every object of the service is obtained when the agent served is *of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made*,' and by service on such an agent, 'the requirement of the statute is answered.' [Citation.] Whether in any given case, the person served may properly be regarded as within the concept of the statute depends on the particular facts involved. [Citations.] Here, it reasonably appears that Lookabaugh as a manufacturer's representative *actively engaged in promoting the sales of Smith and Wesson and earning commissions through such sales, would have ample regular contact with Smith and Wesson and would be of 'sufficient character and rank to make it reasonably certain' that Smith and Wesson would be apprised of the service of process*. Neither the fact that Lookabaugh's

■ *Cosper* applies a fortiori to this case—that is, the relationship between the manufacturer's representative and the manufacturer in *Cosper* was far less intimate, far less connected, and far less interrelated than the relationship between Yamaha-America and Yamaha-Japan in the case before us. If, in *Cosper*, a sporting-goods-oriented nonexclusive purveyor of Smith & Wesson guns on the West Coast was a "general manager in this State" under Corporations Code former section 6500, how much more so is Yamaha-America the "general manager in this State" here, where (unlike *Cosper*), Yamaha-America is the American face of the Japanese company: Here, Yamaha-America *does* have an exclusive arrangement to sell the manufacturer's products, provides warranty service, English owner manuals, does testing, marketing, and *receives complaints* about the manufacturer's products. Probable contact between the domestic representative and the foreign corporation leading to actual notification is far more present here than in *Cosper*. If it was reasonably certain that a relatively casual sporting goods representative would apprise the "foreign" manufacturer of service in *Cosper*, it is doubly reasonably certain Yamaha-America will apprise Yamaha-Japan of any service in California.

### C. Service on Yamaha-America Was Good Enough to Serve Yamaha-Japan

■ As an intermediate appellate court, we are bound by *Cosper*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456 [20 Cal.Rptr. 321, 369 P.2d 937] [intermediate appellate courts have no jurisdiction to refuse to follow binding precedent of state supreme court].) Given that there has been no change in the relevant statutory structure governing service of a foreign corporation in California since *Cosper* (see pt. II.B.1 above), there is no basis to say *Cosper* has been abrogated by statute, and there is

---

organization was designated as 'manufacturer's representatives' nor the fact that such representatives promoted sales 'on their own time and expense' is determinative here. Whether Smith and Wesson was operating 'through an independent contract, agent, employee or in any other manner' [citations], *the essential factor is that Lookabaugh in his selling and advertising activities was performing services for Smith and Wesson and providing it with the opportunity for 'regular contact with its customers and a channel for a continuous flow of business into the state.'* [Citation.] In short, the arrangement of Smith and Wesson with Lookabaugh appears, in the light of the president's affidavit, to have given Smith and Wesson substantially the business advantages that it would have enjoyed 'if it conducted its business through its own offices or paid agents in the state' [citation]; and such arrangement was sufficient to constitute Lookabaugh 'the general manager in this State' for purposes of service of process on Smith and Wesson. (Corp. Code, § 6500.)" (*Cosper, supra,* 53 Cal.2d at pp. 83–84, italics added.)

certainly no basis to distinguish it factually (far from it, see pt. II.B.2 above). So we have to follow it.

*General Motors Corp. v. Superior Court* (1971) 15 Cal.App.3d 81 [93 Cal.Rptr. 148], primarily relied on by Yamaha-Japan, is distinguishable. In *General Motors Corp.*, the plaintiff attempted to sue GM (General Motors) by serving the customer relations manager for Pontiac, a GM division. The appellate court distinguished *Cosper* by noting that GM already *had* "designated an agent whose identity was easily ascertainable to accept service of process." (*General Motors Corp., supra*, 15 Cal.App.3d at p. 85.) To the degree that *General Motors Corp.* contains dicta suggesting *Cosper* only applies when a foreign corporation tries to "maintain a rather low silhouette" or has "sought to avoid its accountability in the State of California" (15 Cal.App.3d at p. 85), that dicta actually favors application of *Cosper* here. As Smith & Wesson did in *Cosper*, but in contrast to GM in the *General Motors Corp.* case, Yamaha-Japan has not made it easy to be served directly by having an "easily ascertainable" designated agent for service of process in California.

Following our Supreme Court, we have no choice but to deny the writ seeking the vacation of the order denying the motion to quash.

### D. The Supreme Court Is Welcome to Revisit *Cosper*.

The *Cosper* court's discussion of Corporations Code former section 6500 is abbreviated.[10] The high court never really grappled with the anomaly that a mere nonexclusive sales representative could not really be described as a *general manager in this state*. To be a manager, much less a general manager, implies a measure of formal control. Neither the sales representative in *Cosper*, nor Yamaha-America here, has any real *control over* their principals—they simply did (or do) their master's bidding. (And, as we have noted, the leash is, if anything, tighter around Yamaha-America than it was around the sporting goods sales representative in *Cosper*.) The phrase "general manager in this state" implies a real presence in the state of a person who has some real control over the corporation being served. The ordinary person would think of the phrase "general manager in this state" as somebody or something more than just a satellite outpost or sales representative only bound to another entity by contract. But we respect stare decisis, so our comments cannot change the required result.

---

[10] We got the entire substantive discussion into one footnote, see footnote 9 above.

## III.  DISPOSITION

The petition for writ of mandate is denied. Costs will be borne by each party.

Aronson, J., and Ikola, J., concurred.

Petitioner's petition for review by the Supreme Court was denied July 29, 2009, S174147. Corrigan, J., did not participate therein. Moreno, J., was of the opinion that the petition should be granted.