Filed 11/6/15

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DIANA BUCHANAN, | D065652 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2011-00057991-CU-FR-NC) |
| RAMON SOTO, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.


Law Offices of A. David Puzo and A. David Puzo for Defendant and Appellant.

Law Office of David Barnier and David Barnier for Plaintiff and Respondent.

Defendant and appellant Ramon Soto (Ramon)[1] appeals an order denying his

motions to (1) vacate entry of default and default judgment pursuant to Code of Civil

---

[1]    For consistency, we use "Ramon" here because this is how the court identified the parties in the underlying action, inasmuch as his wife, Maria Soto (Maria), was also a defendant.  We note Maria is *not* a party in this appeal.

Procedure[2] section 473 and (2) quash service of summons and dismiss pursuant to section 418.10. Ramon filed the motions in connection with an action brought by plaintiff and respondent Diana Buchanan to set aside a fraudulent transfer (fraudulent conveyance action). He contends the court erred in denying his motions because, at the time of entry of default and judgment thereon, the court allegedly did not have personal jurisdiction over him and he was not properly served with process. Affirmed.

BACKGROUND

A. *The Underlying Lawsuits*

The factual and procedural summary relevant to the issues on appeal are derived in part from the trial court's February 14, 2013 Decision After Bench Trial (Decision), which provides in part as follows:

"Plaintiff Diana Buchanan ('Buchanan') claims that defendant Maria Soto ('Maria') transferred certain real property to her husband Ramon Soto ('Ramon') as a fraudulent conveyance to prevent Buchanan from executing an anticipated judgment on the property. . . . Buchanan eventually obtained the underlying judgment when she sued Maria for failing to pay money owed by Maria to Buchanan in connection with Maria's purchase of Buchanan's bridal business.

"Buchanan and Maria have entered into a written stipulation establishing many of the operative facts. The stipulated facts are as follows . . . :

---

[2] All further statutory references are to the Code of Civil Procedure.

" 'On or about January 30, 2007, Buchanan and Maria executed a written "Installment Note" agreement by which Buchanan agreed to sell assets associated with the Bridal Showcase business to Maria for the total sum of $367,761.58.'

" 'The terms of the Installment Note agreement provided that Maria was obligated each month to pay all accumulated interest at the annual rate of 7% per year on the Installment Note principal balance. Maria had [the] option to pay down the principal balance each month but was not required to pay down such principal balance until February 1, 2017, on which date the entire remaining principal balance and any unpaid interest were due in full.'

" 'Concurrent with the execution of the Installment Note agreement, Maria executed a deed of trust by which Maria pledged her property located at 109 Chesapeake Court in San Marcos, California [as] security for her payment obligations under the Installment Note agreement.'

" 'On July 7, 2011, Buchanan filed her Complaint within San Diego County Superior Court Case Numbe[r] 37-2011-00056053-CU-BC-NC ("The Collection Lawsuit") against Maria, alleging that Maria had breached her obligations under the Installment Note agreement to pay minimum interest payments.'

" 'A long time prior, on April 25, 1994, Maria, her husband, Ramon Soto, Lidia Hernandez, and Alfonzo Hernandez purchased adjacent properties located at 355 and 365 Olive Avenue in Vista, California ("The Olive Properties"), and became co-owners on title to The Olive Properties. Between April 25, 1994 and July 29, 2011, no deeds were

3

recorded related to The Olive Properties and The Olive Properties remained titled in the names of Maria, Ramon Soto, Lidia Hernandez, and Alfonso Hernandez.'

" 'On July 16, 2011, Buchanan's Complaint and related Summons in The Collection Lawsuit were personally served on Maria.'

" 'On July 29, 2011, Maria signed and recorded two deeds by which Maria transferred her entire ownership interest in The Olive Properties to her husband, Ramon Soto, as his separate property.  These deeds were recorded with the San Diego County Recorder as Document Numbers 2011-0387163 and 2011-0387164.'

" 'On September 13, 2011, a default was entered against Maria within The Collection Lawsuit.'

" 'On September 16, 2011, a default judgment was entered in favor of Buchanan and against Maria within The Collection Lawsuit in the amount of $416,854.80.'

" 'Also on September 13, 2011, Buchanan filed her Complaint within the present action against Maria [and Ramon], alleging one cause of action for fraudulent transfer and seeking a court order setting aside the transfer of The Olive Properties by Maria to Ramon Soto.'

" 'On October 25, 2011, Maria filed a motion to set aside the default and the default judgment entered against her within The Collection Lawsuit.  Maria's motion was denied after a hearing on December 9, 2011.' "

The record shows Buchanan in mid-November 2011 filed an application for order for publication of summons via *The San Diego Union-Tribune*–North County edition,

4

seeking service of the fraudulent conveyance complaint on Ramon. Accompanying the application was a declaration filed under penalty of perjury by Buchanan (i.e., her counsel).

The declaration provides Buchanan initially attempted personally to serve Ramon with the summons and complaint at the San Marcos address where Maria resided. Maria subsequently contacted Buchanan and claimed that Ramon did not reside at the San Marcos address; that he was deported to Mexico as a result of criminal charges; that Maria believed he *used to* live at a certain address in Tijuana, which Maria provided to Buchanan; and that the only information Maria then had regarding his then-current whereabouts was "that he was living 'in the rural Mexicali area.' " Buchanan thus contended she had made a diligent effort to serve Ramon at his "(apparently) former United States address" and "diligently investigated" his current whereabouts, including by asking Maria, "who would figure to have the most information regarding" her husband and his whereabouts.

The court subsequently granted the application for service on Ramon by publication of the summons and complaint in the fraudulent conveyance action. Service by publication was effected on December 1, 8, 15 and 22, 2011. Entry of default against Ramon occurred on March 13, 2012.

In January 2013, the court conducted a two-day bench trial. The court in its Decision rejected Maria's "main defense" that the fraudulent conveyance action against her could not continue because Ramon was an indispensible party to that action and

5

service of the summons and complaint on him was improper. The court found that Ramon was in fact a party to the fraudulent conveyance action, as he was a named defendant.

The court also found that it was reasonable to infer, and the court in fact inferred, that Ramon had "actual knowledge" of the pendency of the fraudulent conveyance action because "he has telephone contact with Maria, and Maria acknowledges discussing The Olive Properties with Ramon by telephone"; and that, although Maria did not have standing to contest validity of the service on Ramon, such service was in any event valid because "Ramon has been properly served by publication in accordance with applicable statutory and appellate authority."

In finding Ramon was properly served by publication, the court in its Decision also found that Ramon's address was then unknown despite Buchanan's reasonable efforts to obtain his address; that Buchanan initially sought to serve Ramon personally at the San Marcos residence that Buchanan reasonably believed was the "marital residence" of Ramon and Maria; that Buchanan did not know Ramon had been deported to Mexico after serving a prison sentence in the United States; that after learning Ramon was living in Mexico, Buchanan asked Maria and Maria's counsel for his address so service could be effectuated in Mexico; that neither Maria nor her counsel could provide an address where Ramon was then living; that Ramon was then residing "at an unknown address in the Mexicali area"; and that Maria reiterated while under oath at trial that she was unable to provide a current address for Ramon.

6

The court noted it was "skeptical" of Maria's testimony on this subject matter, stating: "The court believes, from the totality of the evidence and Maria's demeanor while testifying, that she has, or could easily obtain, Ramon's current address but she does not wish to provide that information to Buchanan. The Court also believes, based on Maria's testimony, that Ramon has actual knowledge of this case through his telephone communications with Maria, and that Ramon has consciously chosen not to participate directly in this case."

Reaching the merits of the fraudulent conveyance action, the court ruled in favor of Buchanan. The court found Buchanan satisfied her burden to show Maria's transfer to Ramon of her ownership interests in the Olive Properties was a fraudulent transfer within the meaning of Civil Code section 3439.04. The court further found that "Maria made the transfer with actual intent to hinder, delay, or defraud Buchanan"; that "Maria made the transfer without receiving a reasonably equivalent value in exchange for the transfer"; that when Maria made the transfer, she believed and/or reasonably should have believed "she had or would incur debts beyond her ability to pay as they became due"; that Maria transferred her interest in the Olive Properties "within a matter of days after being sued by Buchanan in the underlying collection lawsuit"; and that Maria's testimony she transferred the Olive Properties to Ramon as part of a pre-existing arrangement, whereby Maria received certain properties in Mexico in exchange for the transfer of the Olive Properties, was "not credible."

7

B. *Ramon's Motions to Vacate Judgment/Quash Service of Summons and Complaint*

In early December 2013, several months after the court issued its Decision, Ramon filed his motions to vacate entry of default and default judgment and to quash service of summons and complaint. In both motions, Ramon contended that the court lacked personal jurisdiction over him when it entered default and the judgment thereon and that service of process was in any event improper.

The court denied both motions. In so doing, the court in its January 24, 2014 minute order found Ramon was subject to personal jurisdiction in California. It ruled the "evidence established that Ramon acquired an ownership interest in the subject real property while he was residing in California, before he was deported to Mexico. [¶] Where a person acquires an ownership interest in California real property while living in California, a California court can properly exercise personal jurisdiction over that person in a subsequent lawsuit pertaining to title to that property, even if the person is no longer living in California. [¶] In addition, Ramon is still claiming an ownership interest in the subject real properties and the current lawsuit pertains to the validity of his claim. [¶] The Court finds that these facts are sufficient to establish minimum contacts to assert both general and specific personal jurisdiction (i.e., Ramon has purposefully availed himself of forum benefits by owning real property in this forum, the controversy is related to or arises out of Ramon's ownership of the property, and the assertion of personal jurisdiction would comport with fair play and substantial justice)."

8

In connection with service of process, the court found service by publication was proper because Ramon's address remained unknown during the publication period despite the exercise of reasonable diligence by Buchanan. In so finding, the court ruled the affidavit in support of the application for service by publication was not inadequate and included sufficient facts to establish that Buchanan exercised reasonable diligence in attempting to locate and serve Ramon in Mexico. In addition, the court ruled the publication of service of summons and complaint in a North County newspaper was likely to give notice to Ramon since the San Marcos property and the Olive Properties are located in North County.

The court also refused to grant Ramon relief under section 473.5 because it previously found, and renewed that finding in its January 24 order, that Ramon had actual notice of the fraudulent conveyance action prior to January 7, 2013 (i.e., the date the bench trial began in that action) via telephone communications with Maria. As a result of such knowledge, the court found Ramon "consciously elected not to participate directly in the lawsuit" before trial started.

In addition, the court found that "at all relevant times, Ramon was attempting to evade service of process, and Maria was assisting him in this effort, by keeping Ramon's exact whereabouts in Mexico secret. Interestingly, Ramon's declaration in support of the current motion to vacate does not provide a current address in Mexico -- it provides an address where he lived for a period of time in the past. It appears that Ramon is

9

continuing to try to keep his exact whereabouts secret, so that he cannot be served with legal process."

DISCUSSION

I

Jurisdiction

Ramon contends the court erred when it found he had sufficient contacts in California to support the exercise of general and/or specific jurisdiction over him. Specifically, Ramon contends his only link to this state is a partial ownership interest in real property, which he acquired over 20 years ago with three other owners, including Maria. He also contends there is no evidence whatsoever of any "actionable, wrongful or improper conduct" by him against Buchanan, including any evidence he "conspired" or "participated" in the fraudulent transfer of the Olive Properties by Maria.

A. *Guiding Principles*

California's long-arm statute allows our courts to exercise personal jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (§ 410.10.) This statute thus "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." (See *Daimler AG v. Bauman* (2014) ___ U.S. ___ [134 S.Ct. 746, 753] (*Daimler*).) As such, our inquiry is whether the court's January 24 order comports with the limits imposed by federal due process. (See *ibid.*)

On a challenge to personal jurisdiction by a motion to quash, the plaintiff has the

10

burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*).) The plaintiff must come forward with affidavits and other competent evidence to carry this burden and cannot simply rely on allegations in an unverified complaint. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110.) If the plaintiff meets this burden, "it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable." (*Vons*, at p. 449.)

"On review, the question of jurisdiction is, in essence, one of law." (*Dorel Industries, Inc. v. Superior Court* (2005) 134 Cal.App.4th 1267, 1273.) "If[, however,] there is a conflict in the evidence underlying that determination, we review the trial court's express or implied factual findings under the substantial evidence standard." (*Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 980.) But even where there is a conflict, "we review independently the trial court's conclusions as to the legal significance of the facts." (*Dorel*, at p. 1273.)

Constitutionally, California courts may exercise personal jurisdiction over nonresidents who have sufficient "minimum contacts" with the state. Minimum contacts exist where the relationship between the resident and the forum state is such that the exercise of jurisdiction does not offend " 'traditional notions of fair play and substantial justice' " under the due process clause. (*Int'l Shoe Co. v. Wash.* (1945) 326 U.S. 310, 316.) "The due process clause is concerned with protecting nonresident defendants from

11

being brought unfairly into [the forum state], on the basis of random contacts."  (*Vons*, *supra*, 14 Cal.4th at p. 452.)

"Personal jurisdiction may be either general or specific.  A nonresident defendant may be subject to the general jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.'  [Citations.]"  (*Vons*, *supra*, 14 Cal.4th at p. 445, italics omitted.)  However, "[i]f the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum . . . ."  (*Id.* at p. 446.)  Specific jurisdiction exists when (1) the defendant has purposefully availed himself or herself of doing business in the state; (2) the controversy at issue arises from or is related to the defendant's forum-related contact; and (3) assertion of jurisdiction would be reasonable.  (See *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269; see also *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 477–478 (*Burger King*).)

As we explain, we independently conclude Ramon was subject to the specific jurisdiction of the court.  As such, we need not decide whether Ramon was also subject to the court's general jurisdiction.[3]

---

3    In any event, we note that since 1994, Ramon also has owned real property in California—an interest in the Olive Properties *unrelated* to the interest Maria transferred him in July 2011.  (See *McGee v. International Life Ins. Co.* (1957) 355 U.S. 220, 223 [generally noting that to be subject to the jurisdiction of a forum state, a nonresident need only have *one* contact with the forum—in that case a single insurance contract written at the behest of a California resident—as long as that contact is *meaningful*].)

12

B. *Purposeful Availment*

Here, the undisputed facts in the record show Maria transferred her interest in the Olive Properties to Ramon in July 2011, within days after she was served with the Collection Lawsuit brought by Buchanan. As the then-owner of Maria's interest in the Olive Properties, we independently conclude Ramon purposefully availed himself of the benefits and protections of the laws of California. (See *Easter v. American West Financial* (9th Cir. 2004) 381 F.3d 948, 960-961 [noting defendants "availed themselves of the protections of Washington law because they are beneficiaries of deeds of trust, which hypothecate Washington realty to secure payments on notes owned" by the defendants]; *Sher v. Johnson* (9th Cir. 1990) 911 F.2d 1357, 1363 [noting that holding a deed of trust "represents a significant contact with [the forum]"]; *Gognat v. Ellsworth* (W.D. Ky. (2009) 2009 WL 3486627, *6 [noting "[o]ne who owns real property in a state purposefully avails themselves of the benefits and protections of the laws of that state"]; *Johnson v. Long Beach Mortg. Loan Trust 2001-4* (D.D.C. 2006) 451 F.Supp.2d 16, 32 [noting owner of mortgage note secured by real property in forum state purposefully availed himself of the laws of forum and was subject to specific jurisdiction without any further contacts]; *Jeffreys v. Exten* (D.Del. 1992) 784 F.Supp. 146, 152 [noting property located in forum state is "alone" sufficient to show purposeful availment of mortgage holder].)

Indeed, when Ramon received Maria's interest in the Olive Properties, he became liable for the obligations and expenses related to that interest, including, by way of

13

example only: payment of real property taxes; taxes from rental income, if any; mortgage payments, if any; and repair and/or maintenance costs. As owner, Ramon also enjoyed the benefits and protections of California law. Clearly, once Ramon obtained—and kept—an interest in Maria's Olive Properties, his contacts with California became purposeful and not " 'random,' 'fortuitous,' or 'attenuated.' " (See *Burger King*, *supra*, 471 U.S. at p. 475; see also *Retamco Operating, Inc. v. Republic Drilling Co.* (Tex. Sup. Ct. 2009) 278 S.W.3d 333 [concluding a nonresident transferee of oil and gas interests was subject to specific jurisdiction in the forum based on a claim arising under the state's uniform fraudulent transfer act].)

C. *"Arising Out of" Requirement*

"The second prong of the specific jurisdiction test requires that the controversy relate to or arise out of the defendant's contacts with the forum. The question is whether the plaintiff's causes of action arose out of or had a substantial connection with a relationship the defendant purposefully established with the forum state. (*Vons*, *supra*, 14 Cal.4th at p. 448.) '[T]he cause of action must arise out of an act done or transaction consummated in the forum . . . .' (*Ibid.*) Stated another way, there must 'be a substantial nexus or connection between the plaintiff's cause of action and the defendant's forum contacts . . . .' (*Id.* at p. 453.) '[T]he "arising out of or relating to" standard is in the disjunctive, and is intended as a relaxed, flexible standard . . . .' (*Id.* at p. 455.)" (*Gilmore Bank v. AsiaTrust New Zealand Ltd.* (2014) 223 Cal.App.4th 1558, 1573.)

14

We independently conclude there was a substantial connection or nexus between Ramon's receipt of Maria's interests in the Olive Properties and the operative facts of Buchanan's fraudulent conveyance action against Ramon and Maria.  Quite simply, without the transfer of that interest by Maria, there would have been no fraudulent conveyance action against Ramon.

D.  *Reasonableness*

" '[O]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." '  [Citations.]  Courts may evaluate the burden on the defendant of appearing in the forum, the forum state's interest in adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and 'the "shared interest of the several States in furthering fundamental substantive social policies." '  [Citation.]"  (*Vons*, *supra*, 14 Cal.4th at pp. 447–448.)

"These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.  [Citations.]  On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  (*Burger King*, *supra*, 471 U.S. at p. 477.)  The intensity of the defendant's contacts with the state and the reasonableness of the exercise of jurisdiction are inversely

15

related: the stronger the contacts, the more reasonable an exercise of jurisdiction becomes; the stronger the showing of reasonableness, the smaller the degree of contacts that need be shown to establish purposeful availment. (*Id.* at pp. 477–478.)

Here, we conclude the court's jurisdiction of Ramon is reasonable. Although Ramon claims he is barred from entering the United States after he was deported to Mexico upon his release from prison, we note he hired counsel and participated (after the trial) in the fraudulent conveyance action, as demonstrated by his filing of the motions.

In addition, focusing on the state's interests and the interests of Buchanan to have her lawsuit heard and decided in the situs where the Olive Properties are located, we note Ramon was a necessary party to Buchanan's fraudulent conveyance action. (See *Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 304 [noting "[t]ransferees are necessary parties 'in an action to declare a transfer void as fraudulent' "].) In fact, the court in its Decision noted that Maria's "main defense" to the fraudulent conveyance action was that Ramon was an "indispensible party" to that action and, thus, the case against her could not go forward because he allegedly had not been properly served with the summons and complaint.

In our view, it would be highly unreasonable and candidly, unfair, to require Buchanan to include Ramon as a party in her fraudulent conveyance action, while at the same time preventing her from litigating the validity of Maria's transfer of her interest in the Olive Properties to him because he allegedly was not subject to personal jurisdiction. Such a rule, *if* adopted, would effectively insulate a transfer of real property done with

16

the intent to hinder, delay or defraud a third party, as was the case here, when the transferer is a resident of California and when the transferee is a nonresident who—like Ramon—claims to lack sufficient contacts with California. We conclude such a rule hardly "comport[s] with 'fair play and substantial justice' " (see *Vons*, *supra*, 14 Cal.4th at p. 447, quoting *Burger King*, *supra*, 471 U.S. at p. 476) and, thus, we decline to adopt it.

II

Service

Ramon next contends the court erred in denying his motions because he was improperly served by publication. Primarily, he contends that Buchanan failed to exercise reasonable diligence, and, as a result, the Hague Service Convention applied.

"The Hague Service Convention is a multilateral treaty that provides procedures for the service of process to defendants living in foreign jurisdictions. [Citation.] It applies ' "in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. [¶] This Convention shall not apply where the address of the person to be served with the document is not known." ' [Citation.] Hence, the Convention does not apply to situations in which the whereabouts of the defendant cannot be ascertained despite reasonable diligence." (*People v. Parcel No. 056-500-09* (1997) 58 Cal.App.4th 120, 124-125; see *Kott v. Superior Court* (1996) 45 Cal.App.4th 1126, 1136 (*Kott*) [noting "[t]he only method of service under California law which does not require the transmission of documents abroad, and consequently does not implicate the Hague Service Convention, is service of summons by publication where the

17

party's address remains unknown during the publication period despite the exercise of reasonable diligence"].)

Where, as here, "an issue is resolved by way of declarations or affidavits, ' "the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." [Citation.] But we "independently review [the trial court's] statutory interpretations and legal conclusions [citations]." [Citation.]' " (*Lebel v. Mai* (2012) 210 Cal.App.4th 1154, 1159 (*Lebel*).)

In the instant case, the record shows and the court found Buchanan initially sought to serve Ramon personally at the San Marcos residence that Buchanan believed was the "marital residence" of Ramon and Maria. When Buchanan learned Ramon had been deported to Mexico after serving a prison sentence in the United States, she asked Maria and Maria's counsel for Ramon's Mexican address. The record shows Maria then provided Buchanan with an address where Ramon *used to* live, and then told Buchanan the *only* information she had regarding his whereabouts was he was "living 'in the rural Mexicali area.' "

The record also shows that, although Maria was in telephone contact with Ramon and admitted discussing the Olive Properties with him, at all times relevant Maria continued to claim she did not have a current address for her husband Ramon. The court

18

in its Decision noted that, in testimony under oath at the bench trial, Maria reiterated she was "unable to provide a current address for Ramon."

What's more, the court found in connection with Ramon's motions that he was attempting to evade service of process. The record contains sufficient evidence to support this finding. Such evidence includes the fact that Maria spoke to Ramon during the pendency of the fraudulent conveyance action, as noted, including about the Olive Properties. The court found Maria's testimony not credible regarding her alleged lack of knowledge of Ramon's whereabouts, a finding we do not disturb on appeal. (See *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631 [noting a court of review does not reweigh evidence, assess credibility, or make factual findings contrary to those made by the trier of fact].)

There is additional evidence to support the finding Ramon was attempting to avoid service. The court noted, and we have confirmed, that in Ramon's declaration in support of the motion to vacate he did not give a current address in Mexico where he could then be served personally, which he contends is necessary. Rather, the record shows Ramon instead provided an address where he had not lived for several *months.* Thus, even when Ramon specially appeared in the action through counsel and provided an address, the address was outdated and could not be used by Buchanan to *personally* serve Ramon in Mexico.

On this record, we conclude substantial evidence supports the court's finding that Buchanan made reasonable, good faith and diligent efforts to attempt to locate Ramon

19

and personally serve him with the summons and complaint in the fraudulent conveyance action. (Contra, *Lebel*, *supra*, 210 Cal.App.4th at p. 1158 [noting plaintiff tenant failed to exercise reasonable diligence in ascertaining a foreign landlord's address for purposes of the Hague Convention when plaintiff knew landlord lived in London, England and when defendant had provided plaintiff both his email address *and* telephone number where he could be reached in connection with the tenancy].)

Ramon nonetheless contends there was a lack of reasonable diligence because at her deposition in February 2012, Maria provided Buchanan with Ramon's telephone number, after Ramon requested she purchase minutes for his "prepaid cell phone." We disagree. We note that Maria provided this information *after* service by publication had been properly effected on Ramon pursuant to court order. We thus find this contention unavailing and conclude the Hague Convention's service requirements inapplicable in this case.

Finally, Ramon contends the affidavit submitted in support of Buchanan's application for service by publication was inadequate. We disagree. Although the affidavit mistakenly set forth the wrong address of the properties that were the subject of the fraudulent conveyance action,[4] we note the affidavit included as an attachment a copy of the complaint in which the proper addresses were given. More importantly, the service by publication was unaffected by this mistake. We conclude this mistake was not

---

[4]     The address used in the affidavit was for the bridal business purchased by Maria from Buchanan.!(Exh. C, p. 2 of Exh. A, line 24 [complaint].)

20

prejudicial and thus reject Ramon's contention it rendered service by publication ineffective.

We also reject Ramon's contention that the affidavit was inadequate because it failed to include sufficient evidence to show a cause of action existed against Ramon for fraudulent transfer. For one thing, as noted the complaint was attached to the affidavit, which set forth the basis of the action against Ramon. For another thing, the affidavit provided that Maria transferred her interests in the properties to Ramon without "receiving fair compensation in return" and thus, that Buchanan sought to "reverse the transfer of [Maria's] ownership interest . . . from [Ramon] back to [Maria]."

We conclude this evidence is not only sufficient to show that a cause of action existed against Ramon, but it also showed that he was a necessary party to the action and that the action involved real property located in this state. (See § 415.50, subd. (a) [providing a "summons may be served by publication if upon affidavit it appears . . . the party to be served cannot with reasonable diligence be served in another manner . . . and that either: [¶] (1) [a] cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action [or] [¶] (2) [t]he party to be served has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action consists wholly or in part in excluding the party from any interest in the property].)[5]

---

5    In light of our conclusion, we need not reach Buchanan's alternate contention that, irrespective of whether service by publication was effective, Ramon had "actual notice" of the fraudulent conveyance action brought against him and Maria.

21

## DISPOSITION

The order denying Ramon's motions is affirmed.  Buchanan to recover her costs of appeal.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.