Filed 6/6/24  Chaganti v. Fifth Third Bank CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NAREN CHAGANTI<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FIFTH THIRD BANK et al.,<br><br>Defendants and Respondents. | H050995<br>(Santa Clara County<br>Super. Ct. No. 21CV389465) |

This case arises from a banking dispute that took place in Missouri in 2010. Plaintiff Naren Chaganti initially sued Fifth Third Bank (bank) in Missouri in 2015, ultimately resulting in summary judgment in the bank's favor.

Chaganti then brought this action in Santa Clara County Superior Court against the bank and Edward F. Luby, his former attorney who briefly represented him in the Missouri action.  Chaganti alleges that the bank negligently allowed funds to be withdrawn from certain accounts by an unauthorized individual, and later conspired with Luby to obtain summary judgment in the Missouri action.

Both the bank and Luby (respondents) successfully moved to quash service of summons on the ground that they were not subject to the trial court's personal jurisdiction because they lacked the requisite minimum contacts with the state.

Chaganti appeals, arguing that the trial court has personal jurisdiction over respondents on numerous grounds.  We disagree and affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. *The Missouri banking dispute and lawsuit*

According to the operative complaint in this action, Chaganti is the president of Whispering Oaks RCF Management Co., Inc. (Whispering Oaks). In 2008, Whispering Oaks opened two business trust accounts with the bank in St. Louis, Missouri. Chaganti alleges he instructed the bank not to allow his secretary, Amanda Palazzolo, to withdraw funds from one of the accounts without his prior approval.

Notwithstanding those instructions, Chaganti alleges, the bank allowed Palazzolo to withdraw $9,000 from the accounts between January and July 2010, without his approval. After being notified of the unauthorized withdrawal, Chaganti claims, the bank failed to conduct a timely and proper investigation, gave false assurances it was investigating the incident, and failed to file a claim with its insurance company to cover the losses.

Chaganti eventually filed a "suit for damages" against the bank in St. Louis County Circuit Court in Missouri in 2015 (Missouri action). In April 2019, Luby substituted in as counsel for Chaganti in the Missouri action. Roughly a year later, in May 2020, Luby informed Chaganti that he had filed a motion to withdraw as his attorney, although a motion for summary judgment by the bank was pending at the time. Summary judgment was later entered in the bank's favor.

## B. *The California lawsuit*

On October 4, 2021, Chaganti filed a complaint in Santa Clara County Superior Court against respondents (complaint). The complaint alleges causes of action against the bank for breach of contract, negligence, breach of the Uniform Fiduciaries Law, and promissory fraud.

Against Luby, it alleges causes of action for legal malpractice, fraud and deceit. According to the complaint, Luby "failed to perform his services as a competent attorney, withdrew abruptly, filed false papers with the court of his true reasons to withdraw, and

2

failed to preserve Plaintiff's ability to defend itself."  Moreover, Luby did not disclose that he "was not qualified or experienced to represent Plaintiff in the suit against [the bank], or his true intent to sabotage Plaintiff's case, or his prior relationship with Defendant's attorneys."  As a result, Chaganti alleges, summary judgment was entered against him in the Missouri action.

Finally, the complaint alleges causes of action against respondents for conspiracy to commit injury.  According to Chaganti, Luby "secretly agreed with [the bank] and/or its attorneys or agents to not oppose the summary judgment motion after it was filed."  He claims they devised a "common plan or scheme to sabotage" Chaganti's case, agreeing that Luby would not work on responding to the summary judgment motion, but instead would withdraw from the case so Chaganti would be left with no representation.

### C. *Motions to quash*

Respondents filed motions to quash service of summons.[1]  Luby argued that the trial court does not have general jurisdiction over him because he has been a life-long resident of Missouri, and files his tax returns, owns property, is registered to vote, has a driver's license, and practices law in that state.  He also argued that the court does not have specific jurisdiction over him because he did not purposefully avail himself of the benefits of the state.  Instead, he contended, Chaganti had contacted him at his office in Clayton, Missouri and traveled there to meet him and execute their contract for representation in the Missouri action.  Moreover, the complaint "is devoid of any alleged conduct that occurred within the State of California."  Accordingly, he argued, Chaganti's claims do not arise from Luby's contacts with California.

The bank made similar arguments in its motion to quash.  According to the bank, the trial court lacks general or specific jurisdiction over it because the bank is a national

---

[1] Prior to filing the motions to quash, Luby removed the case to federal court on the basis of diversity jurisdiction.  Chaganti then successfully moved to remand the case back to state court on the ground that the amount in controversy was less than $75,000.

3

bank with its main office in Cincinnati, Ohio, there is "absolutely no connection between this Court and the claims at issue, and none of the events giving rise to Plaintiff's action took place in California."

In opposing the motions, Chaganti argued that personal jurisdiction is established over the parties under the "effects test" because respondents committed intentional acts expressly aimed at Chaganti in California. Specifically, Chaganti argued that respondents conspired to harm him, including after the complaint was filed. He also argued that the bank had consented to personal jurisdiction by agreeing to accept service, thereby making a general appearance, and that Luby was subject to personal jurisdiction because he had knowingly made phone calls and sent e-mails to Chaganti, who was in California.

In connection with his opposition to the bank's motion, Chaganti sought leave to take jurisdictional discovery, "[i]f the Court determines that there is need to establish further factual basis for jurisdiction over the bank."

The trial court issued its order on March 23, 2023, granting both motions and denying Chaganti's request for jurisdictional discovery (order). The court held that Chaganti had failed to demonstrate Luby directed his purported tortious conduct towards California and that, regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows the defendant has formed a contact with the forum state. With respect to the bank, the trial court held that it did not have sufficient minimum contacts with California. It noted that the bank is not incorporated in California, but instead was a citizen of Ohio. In addition, it found there was no connection between California and the allegations against the bank, which concern accounts in Missouri and the Missouri action.

Chaganti timely appealed.

4

## II. DISCUSSION

Chaganti argues that: (1) Luby's e-mails and phone calls with Chaganti while the latter was in California constitute sufficient minimum contacts; (2) the allegations of intentional torts are sufficient to confer personal jurisdiction over respondents because those parties intended the effects to be felt in California; (3) the bank consented to personal jurisdiction in California by registering with the secretary of state and appointing a registered agent to accept service of process in the state; (4) the bank made a general appearance in the case, thereby establishing personal jurisdiction; and (5) the trial court abused its discretion by not permitting jurisdictional discovery.

### A. *Applicable law and standard of review*

California's long-arm statute authorizes courts to exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).) The statute " 'manifests an intent to exercise the broadest possible jurisdiction,' limited only by constitutional considerations of due process." (*Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 583, quoting *Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445.) A state court's assertion of jurisdiction comports with due process requirements "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons, supra*, at p. 444, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) The primary focus of that inquiry is "the defendant's relationship to the forum State." (*Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. 255 [2017 U.S. Lexis 3873] [137 S.Ct. 1773, 1779] (*Bristol-Myers*).)

Courts have recognized two types of personal jurisdiction: general and specific. (*Bristol-Myers, supra*, 582 U.S. at p. 262.) "A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are

5

'substantial . . . continuous and systematic.' " (*Vons*, *supra*, 14 Cal.4th at p. 445, quoting *Perkins v. Benguet Mining Co*. (1952) 342 U.S. 437, 445.)  "In such a case, 'it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' " (*Vons*, at p. 445, quoting *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147.)  "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." (*Ford Motor Co. v. Montana Eighth Judicial Dist. Court* (2021) 592 U.S. 351 [2021 U.S. Lexis 1610] [141 S.Ct. 1017, 1024] (*Ford Motor Company*).)

A defendant without such continuous contacts nevertheless may be subject to a court's *specific* jurisdiction if it "has purposefully availed [itself] of forum benefits [citation], and the 'controversy is related to or "arises out of" a defendant's contacts with the forum' " (*Vons*, *supra*, 14 Cal.4th at p. 446, quoting *Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414 (*Helicopteros*)), and " 'the assertion of personal jurisdiction would comport with "fair play and substantial justice." ' " (*Vons*, at p. 447.)  Specific jurisdiction is thus contingent on the " 'relationship among the defendant, the forum, and the litigation.' " (*Helicopteros* at p. 414.)

" 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.]  This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich*, *supra*, 29 Cal.4th at p. 269, quoting *United States v. Swiss American Bank, Ltd*. (1st Cir. 2001) 274 F.3d 610, 623.)  "Thus, the ' "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts [citations], or of the "unilateral activity of another party or a third person." [Citations.]' " (*Pavlovich*, at p. 269, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 475 (*Burger King*).)

6

The second prong of the specific jurisdiction analysis inquires whether a plaintiff has established that its claims " 'arise out of or relate to defendant's contacts with the forum.' " (*Ford Motor Company*, *supra*, 592 U.S. at p. 236, italics omitted.) "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." (*Ibid.*)

Even where such minimum contacts do not exist, a defendant may nevertheless consent to personal jurisdiction or otherwise waive objections to it by making a general appearance. "A general appearance by a party is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50, subd. (a).) " ' "A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed." [Citation.] Such participation operates as consent to the court's exercise of jurisdiction in the proceeding. "Unlike jurisdiction of the subject-matter . . . jurisdiction of the person may be conferred by consent of the person, manifested in various ways" including a "general appearance." [Citations.] By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process.' " (*ViaView*, *Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 210 (*ViaView*), quoting *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 7-8.)

When a defendant moves to quash service of process based on lack of personal jurisdiction, " '[t]he plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.' " (*Pavlovich*, *supra*, 29 Cal.4th at p. 273; *Vons*, *supra*, 14 Cal.4th at p. 449.) To satisfy that burden, the plaintiff must provide support with "competent evidence of jurisdictional facts. Allegations in an unverified complaint are insufficient to satisfy this burden of proof." (*In re Automobile Antitrust Cases I & II*

(2005) 135 Cal.App.4th 100, 110 (*Automobile Antitrust Cases*).) "The plaintiff must come forward with affidavits and other competent evidence to carry this burden." (*Buchanan v. Soto* (2015) 241 Cal.App.4th 1353, 1362 (*Buchanan*).) Only when a plaintiff carries that burden does it then shift to the defendant to demonstrate that the court's exercise of personal jurisdiction over it would be unfair or unreasonable. (*Burger King*, *supra*, 471 U.S. at p. 472; *Vons*, at pp. 447-448.)

If there is conflicting evidence, "the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence." (*Vons*, *supra*, 14 Cal.4th at p. 449.) Where there is no conflict, "the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Ibid*.) Here, the parties do not identify any factual disputes the trial court was required to resolve. Accordingly, we conduct an independent review.

### B. Analysis

#### 1. Luby's e-mails and phone calls with Chaganti

Chaganti contends that Luby communicated with him in California via phone, e-mail and U.S. mail. In support of his opposition to Luby's motion to quash in the trial court, Chaganti submitted a declaration in which he stated that the two spoke by telephone to discuss Luby's representation in the Missouri action. He also stated that Luby "sent many e-mail letters" to him in California, including the letter regarding his withdrawal as Chaganti's attorney, a copy of which he included as an exhibit. According to Chaganti, those communications were sufficient to establish personal jurisdiction over Luby pursuant to the so-called "effects test" pursuant to *Calder v. Jones* (1984) 465 U.S. 783 (*Calder*).

In *Calder*, a California plaintiff sued a Florida reporter and editor for libel based on an article the defendants wrote and edited in Florida for publication in the National Enquirer, a national newspaper that included a California circulation of roughly 600,000.

8

(*Calder, supra,* 571 U.S. at pp. 784-786.) The United States Supreme Court examined the contacts the defendants had created with California by writing the article and found them to be sufficient to constitute minimum contacts. (*Ibid.*) Specifically, the defendants had relied on phone calls with sources in California for the information in the article, which focused on the plaintiff's activities in California, and they had caused reputational injury to the plaintiff, the brunt of which was suffered in California. (*Ibid.*) Jurisdiction over the defendants in California was proper, the court held, "because of their intentional conduct in Florida calculated to cause injury to [plaintiff] in California." (*Id.* at p. 791.)

Chaganti contends that *Calder* compels a finding of personal jurisdiction here based solely on Luby's phone call and e-mails to him in California. He argues: "Here, Luby communicated with Plaintiff in California, knew that Plaintiff was a California resident, and thus all acts of Luby touched and concerned California. The fact that Luby sent a letter to Plaintiff in California . . . is sufficient to establish his California connection." We do not agree.

*Calder* does not stand for the proposition that any communications with a plaintiff located in the forum state necessarily create sufficient minimum contacts. In fact, the United States Supreme Court has explained that *Calder* "made clear that mere injury to a forum resident is not a sufficient connection to the forum." (*Walden v. Fiore* (2014) 571 U.S. 277, 290 (*Walden*). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (*Ibid.*) The "relationship must arise out of the contacts that the 'defendant *himself*' creates with the forum State." (*Id.* at p. 284.)

The California Supreme Court has described the *Calder* "effects test" as "governing whether a defendant in an intentional tort action has purposefully availed himself of the forum benefits." (*Zehia v. Superior Court* (2020) 45 Cal.App.5th 543,

9

553; citing *Pavlovich, supra*, 29 Cal.4th at p. 269.) That inquiry focuses on the defendant's intentionality and is satisfied when the defendant "purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on his contacts with the forum." (*Pavlovich*, at p. 269.)

Here, Luby did not purposefully direct his activities toward *the forum* or receive any benefit from the forum by communicating with Chaganti via phone and e-mail. Luby's only connection with California was the random, fortuitous, and attenuated fact that Chaganti happened to be there. (*Pavlovich, supra,* 29 Cal.4th at p. 269.)

Nor does the controversy here relate to or arise out of Luby's contacts with the forum state. (*Vons*, *supra*, 14 Cal.4th at p. 446.) As a threshold matter, Chaganti does not even argue this prong of the minimum contacts test. Instead, he argues only that Luby communicated with him and knew he was a California resident. Yet that has nothing to do with whether the controversy at issue here arose from or relates to Luby's contacts with California. Chaganti has therefore forfeited any such argument. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.) We are not required to develop a party's arguments or scour the record for supporting evidence and we may treat undeveloped arguments as forfeited. (*Id*., citing *ComputerXpress*, *Inc*. *v*. *Jackson* (2001) 93 Cal.App.4th 993, 1011.)

Even if we were to construe Chaganti's brief as having made the argument, it would have no merit. The controversy at issue here consists of the incidents that occurred at the bank in Missouri, and in the proceedings of the Missouri action in Missouri. There is no evidence in the record that the controversy between the parties arose from, or relates to, Luby's contacts with Chaganti while the latter was in California. The mere fact that Chaganti was present in California when Luby communicated with him does not mean the controversy arose from those contacts.

10

This case is therefore distinct from *Moncrief v. Clark* (2015) 238 Cal.App.4th 1000 (*Moncrief*), on which Chaganti relies.  In *Moncrief*, an Arizona attorney represented an Arizona company in the sale of farm equipment to a California company represented by a California attorney.  (*Id*. at p. 1003.)  After discovering that the Arizona company did not actually own the equipment as the Arizona attorney had stated, the California company sued its own attorney in California.  (*Ibid.*)  That attorney then cross-complained against the Arizona attorney, who moved to quash for lack of personal jurisdiction.  (*Ibid.*)

The court of appeal held that the operative facts of the controversy arose from the defendant's contacts with the forum state because the Arizona attorney was alleged to have misrepresented the ownership of the equipment during his phone calls with the California attorney.  (*Moncrief, supra,* 238 Cal.App.4th at p. 1008.)  Based on that, the court found, there was a "substantial nexus or connection between the Arizona attorney's forum-related activities and the California attorney's claims in his cross-complaint." (*Ibid*.)

Here, by contrast, Luby's phone call and e-mails with Chaganti had nothing to do with the controversy.  Instead, the complaint alleges that Luby committed legal malpractice in handling the Missouri action and conspiring with the bank—in Missouri.

This case is more similar to *Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221 (*Edmunds*).  In that case, a Hawaii attorney represented a California limited partnership in litigation in Hawaii over real estate located there.  (*Id*. at p. 224.)  The partnership later sued the attorney in California stemming from his representation in the Hawaii litigation.  (*Ibid*.)  The trial court denied the attorney's motion to quash based on the effects theory—effects felt in California from actions taken outside the state.  (*Id*. at p. 229.)

The court of appeal reversed.  Despite the fact that the attorney had represented California residents and communicated with them about the subject of the litigation, the

requisite minimum contacts were lacking. (*Edmunds, supra,* 24 Cal.App.4th at p. 229.) As the court explained, "the mere facts that the attorney traveled to California, made phone calls and wrote letters to and from this state, and accepted payment from a California client, do not establish purposeful availment of the benefits and protections of California law." (*Id.* at p. 234, citing *Sher v. Johnson* (9th Cir. 1990) 911 F.2d 1357, 1362-1363.) "[B]y traveling to California to represent his client in deposition, and by carrying out representation of a California client in Hawaii litigation, [the attorney] was essentially promoting the economic well-being of his Hawaii law partnership, along with the Hawaii interests of the partnership and its constituents, based on their interest in Hawaii real property. Any promotion of their California financial interests was incidental. Everything [he] did was done in his capacity as a Hawaii attorney, and he thus lacks the necessary close relationship to the State of California in these matters to justify the assertion of personal jurisdiction over him." (*Edmunds,.* at p. 236.)

Luby's contacts with the forum state here were even more attenuated than those the court found insufficient in *Edmunds*. We similarly conclude that Luby is not subject to personal jurisdiction in California by virtue of his phone call and e-mails to Chaganti.

### 2. *Alleged intentional torts*

Chaganti argues that, pursuant to *Calder*, his allegations of intentional torts, with the effects felt by Chaganti in California, are sufficient to establish personal jurisdiction over respondents. He claims that "the proper analysis should focus on the nature, manner and place of the injury claimed and the location and intent of the defendant when the injury was suffered." Under *Calder*, he argues, "because the complaint alleges intentional torts by the defendants that caused the 'brunt' of damage to Plaintiff in California, there is jurisdiction over the defendants here."

Again, Chaganti misreads *Calder*. As we have explained, it does not hold that the mere allegation of an intentional tort that caused harm to an individual who resides in a particular state is sufficient to establish personal jurisdiction over the defendant there.

12

Instead, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." (*Walden, supra*, 571 U.S. at p. 290.)

In *Walden*, a Georgia police officer working at an Atlanta airport seized money from two Nevada residents. (*Walden, supra,* 571 U.S. at pp. 289-290.) The Nevada residents sued the police officer in Nevada, arguing their alleged injury occurred in that state. The United States Supreme Court held that the exercise of jurisdiction in Nevada was improper even though the plaintiffs "experienced [the] effect[s]" of the officer's conduct there. (*Ibid*.) Critically, only the plaintiffs in *Walden* had had any contacts with Nevada—the police officer had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." (*Id.* at p. 289; see also *Ford Motor Company, supra,* 592 U.S. at pp.370-371.)

The same is true here, where the complaint does not allege that either defendant had any contacts with the forum state that relate to the controversy. *Calder* does not support Chaganti's position.

Chaganti also relies on *Casey v. Hill* (2022) 79 Cal.App.5th 937. In *Casey*, a husband and wife residing in Missouri filed a lawsuit there against a California resident and California corporation for making deceptive and fraudulent representations while providing them adoption services. (*Id.* at p. 948.) The defendants did not respond to service and a default judgment was entered. (*Ibid*.)

The Missouri couple then sought entry of judgment on the Missouri judgment in San Diego County Superior Court. (*Casey v. Hill, supra,* 79 Cal.App.5th at p. 948.) The defendants moved to vacate the entry of judgment, arguing the Missouri court lacked personal jurisdiction over them because they had insufficient minimum contacts with that state. (*Ibid*.) The trial court agreed and granted the motion to vacate entry of the Missouri judgment. (*Ibid*.)

The court of appeal reversed on the ground that the defendants had not challenged or refuted the claims that they had directed their allegedly tortious communications "*into*

13

Missouri *at* Missouri citizens." (*Casey v. Hill, supra,* 79 Cal.App.5th at p. 948.) The lawsuit ' "arose out of allegations that *defendants committed a "tortious act" in Missouri* (i.e., fraud)." ' (*Ibid.*) Because the defendants had "sent communications into Missouri that contained allegedly fraudulent misrepresentations and caused injury in Missouri, and which were the basis of the claims asserted against Defendants in the Missouri action," the "purposeful direction" prong of the specific jurisdiction test was satisfied. (*Id.* at p. 965.)

We are not confronted with such facts here. Chaganti has not provided competent evidence of any fraudulent activities directed toward the forum state. (*In re Automobile Antitrust Cases, supra,* 135 Cal.App.4th at p. 110; *Buchanan, supra,* 241 Cal.App.4th at p. 1362.) Chaganti argues that because the complaint alleges intentional torts by respondents that caused harm in California, personal jurisdiction is established. However, allegations in an unverified complaint are insufficient to satisfy a plaintiff's burden of proof. (*In re Automobile Antitrust Cases,* at p. 110.)[2]

Chaganti argues there is "circumstantial evidence of an ongoing conspiracy." Specifically, he contends the bank gave Luby a "fake document" to support his attempt to remove the case to federal court. In connection with his attempt to demonstrate a sufficient amount in controversy, Luby had submitted a document entitled "Rules and Regulations Applicable to All Fifth Third Accounts and Cards," which he contended constituted an agreement between Chaganti and the bank that provides for an award of attorney fees, which would theoretically make the cumulative amount in controversy exceed the $75,000 threshold. The federal court rejected the argument, noting that Luby

---

[2] The other authority Chaganti relies on is equally inapposite. (See, e.g., *SK Trading International Co. Ltd. v. Superior Court of San Francisco County* (2022) 77 Cal.App.5th 378 [undisputed evidence showed defendants directed alleged anticompetitive price-fixing policies toward California].)

14

had not provided any evidence to authenticate the document or establish that the bank accounts at issue were subject to the purported rules and regulations.

Chaganti contends that the fact Luby submitted the document "strongly suggest[s] continuing collaboration in furtherance of an ongoing conspiracy between Luby and the bank." But Chaganti has not provided any competent evidence that the bank provided the document to Luby. And, even if he had, he has not explained how it would constitute evidence of tortious activity directed at the forum state.[3]

Lastly, Chaganti argues that numerous aspects of the trial court's ruling regarding personal jurisdiction were incorrect. However, because our review here is de novo, we do not address the trial court's reasoning or rationale. (*Hasty v. American Automobile Assn., etc.* (2023) 98 Cal.App.5th 1041, 1054, citing *Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 730.)

Exercising our independent review here, we determine Chaganti has failed to carry his burden of demonstrating facts justifying the exercise of jurisdiction. (*Pavlovich*, *supra*, 29 Cal.4th at p. 273.)

### 3. *Registering with the secretary of state*

Chaganti argues that the bank consented to personal jurisdiction in California by maintaining an office, registering with the secretary of state, and designating an agent for service of process in the state. He relies on a recent case from the United States Supreme Court, *Mallory v. Norfolk Southern Railway Co.* (2023) 600 U.S. 122 (*Mallory*). In *Mallory*, the plaintiff had worked for Norfolk Southern as a freight-car mechanic for nearly 20 years in Ohio and Virginia. (*Id.* at p. 126.) Upon leaving the company, he moved to Pennsylvania shortly before returning to Virginia. (*Ibid.*) After being

---

[3] Chaganti has requested that this court take judicial notice of the "federal court record" from the removal proceedings. We decline the request, as it is not necessary to our resolution of this appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 755, fn. 6.)

diagnosed with cancer, the plaintiff sued the company in Pennsylvania state court under a workers' compensation law permitting railroad employees to recover damages for their employers' negligence. (*Ibid*.)

The company argued it was not subject to personal jurisdiction in Pennsylvania for this lawsuit because the plaintiff resided in Virginia, the complaint alleged he had been injured in Ohio and Virginia, and the company was incorporated and headquartered in Virginia. (*Mallory, supra,* 600 U.S. at p. 126.)

The plaintiff argued that the company had registered to do business in Pennsylvania, in light of its regular, systematic and extensive operations there. (*Mallory, supra,* 600 U.S. at p. 127.) In addition, Pennsylvania state law requires out-of-state companies that register to do business there to agree to appear in courts on "any cause of action" against them. (*Ibid*.) By complying with that law, the plaintiff argued, the company had consented to personal jurisdiction for claims like his. (*Ibid*.)

The United States Supreme Court agreed with the plaintiff and held that the Pennsylvania law did not violate federal due process requirements and that the company had consented to personal jurisdiction in the state. (*Mallory, supra,* 600 U.S. at p. 146.)

Chaganti argues that California has the same type of registration statutes as those at issue in *Mallory*, citing Corporations Code section 2105, subdivision (a). However, California does not have the same type of law that was at issue in *Mallory*. Corporations Code section 2105, subdivision (a) provides that a "foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification." It then lists information the corporation must provide to obtain that certificate. (Corp. Code, § 2105, subd. (a).) But the statute says nothing about agreeing to appear in court on "any cause of action," as the Pennsylvania law in *Mallory* did. Although the statute does require foreign corporations to designate an agent for service of process, the California Supreme Court has held that "designation of an agent for service of process and qualification to do business in California alone are insufficient to permit

16

general jurisdiction." (*Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 268, citing *DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1095.)

Chaganti argues that the "upshot of *Mallory* is that no company that conducts intrastate business in California may henceforth argue against *in personam* jurisdiction in a California court, regardless of whether the suit is based on in-state conduct or out-of-state conduct." That misreads *Mallory*, which held only that the Pennsylvania state law at issue did not violate due process requirements and that the company in that lawsuit had consented to personal jurisdiction in the state by complying with the law.

The bank in this lawsuit did not consent to personal jurisdiction in California by registering with the secretary of state and designating an agent for service of process.

### 4. *General appearance*

Chaganti argues that the bank made a general appearance by appearing at a case management conference, thereby waiving any challenge to personal jurisdiction. But that is not the law—attending a status conference does not necessarily constitute a general appearance pursuant to Code of Civil Procedure section 1014. That section sets forth a list of acts constituting an "appearance," and provides: "A defendant appears in an action when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, moves for reclassification pursuant to Section 403.040, gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant." (Code Civ. Proc., § 1014.)

That list is not exclusive, but " 'rather the term may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person.' " (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147.) The determinative factor is "whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed." (*Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1397; see also *ViaView*, *supra*, 1 Cal.App.5th at p. 210 [" ' "[a] general appearance

17

occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed" ' "].)

There is no evidence here that, by appearing at a status conference, the bank took part in the action in a way that recognizes the authority of the court to proceed. Chaganti cites only to a minute order reflecting a status conference on February 16, 2023, a date that fell in the midst of the proceedings on respondents' motions to quash. The minute order, which does not include any details about what transpired, does not establish that the bank waived the right to challenge personal jurisdiction.

In addition, as the bank argues, if a party files a motion to quash "before or simultaneously with an act that would otherwise constitute a general appearance, under subdivision (e) of section 418.10 that party will *not* be deemed to have 'generally appeared' in the action, but instead will be deemed to have 'specially appeared' and not waived the party's jurisdictional challenge." (*Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 426 [Code of Civil Procedure section 998 offer after motion to quash did not constitute general appearance].) Chaganti did not respond to that argument in his reply brief.

### 5. *Jurisdictional discovery*

As noted above, in his opposition to the bank's motion to quash, Chaganti sought leave to take jurisdictional discovery, "[i]f the Court determines that there is need to establish further factual basis for jurisdiction over the bank." In its order, the trial court denied the request, stating that Chaganti had failed to "identify what type of discovery he would propound if given the opportunity and the Court is unpersuaded that any discovery would likely lead to the production of evidence establishing specific personal jurisdiction over [the bank] in California."

"A plaintiff is generally entitled to conduct discovery with regard to a jurisdictional issue before a court rules on a motion to quash." (*Goehring v. Superior Court* (*Bernier*) (1998) 62 Cal.App.4th 894, 911 (*Goehring*), citing *Mihlon v. Superior*

18

*Court* (1985) 169 Cal.App.3d 703, 711.) "The granting of a discovery request 'lies in the discretion of the trial court, whose ruling will not be disturbed in the absence of manifest abuse.' " (*Goehring,* at p. 911, citing *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 487.)

Chaganti argues on appeal that "a plaintiff has the right to conduct discovery of facts that may show that the trial court has personal jurisdiction over the nonresident defendant." Beyond that statement, though, the extent of his argument is only that "there are many questions regarding collaboration between Luby and the bank with respect to the alleged McClurg declaration, which was not even filed."

Chaganti has not addressed the deficiencies identified by the trial court—the failure to specify the type of discovery he would propound, and the lack of persuasion that discovery would lead to competent evidence—or otherwise explain how the trial court abused its discretion. He has therefore failed to carry his burden on appeal. (See, e.g., *Automobile Antitrust Cases, supra,* 135 Cal.App.4th at p. 127 ["plaintiffs failed to show that further discovery was likely to lead to the production of evidence establishing jurisdiction against [defendants]. As such, we are satisfied that the trial court did not abuse its discretion by rejecting plaintiffs' request for a continuance to conduct further jurisdictional discovery"].)

## III.   DISPOSITION

The order is affirmed. Respondents may recover their costs on appeal.

_____
                      Wilson, J.

WE CONCUR:

_____
    Bamattre-Manoukian, Acting P. J.

_____
             Adams, J.*

*Chaganti v. Fifth Third Bank et al.*
H050995

_____

*Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution