[Civ. No. 63332. Second Dist., Div. One. Mar. 15, 1982.]

FRANCIS NAKASONE, Plaintiff, Cross-defendant and Respondent, v.
VERLIE RANDALL, as Administrator, etc., Defendant, Cross-complainant and Appellant.

758

COUNSEL

Rezac, Stroud & Suhr and Randy L. Kuckuck for Defendant, Cross-complainant and Appellant.

Davis & Davis and M. Stephen Davis for Plaintiff, Cross-defendant and Respondent.

OPINION

LILLIE, Acting P. J.—Defendant appeals from order denying motion to quash a prejudgment writ of attachment. The primary appellate issue is whether the claim upon which the cause of action is based arose out of the defendant's conduct of a trade, business or profession.

On May 5, 1980, plaintiff filed suit to recover damages for breach of contract for sale of real property by defendant, a resident of Guadalajara, Jalisco, Mexico. The complaint alleges that on September 24, 1979, plaintiff agreed in writing to buy and defendant agreed to sell a certain piece of real property for $340,000. Concurrently with filing the complaint plaintiff sought and was issued an ex parte order for issuance of writ of attachment (nonresident [§ 492.010, Code Civ. Proc.]) pursuant to section 485.210, Code of Civil Procedure. A supporting declaration asserted that defendant informed plaintiff she was disposing of all of

her real property because she had moved to Guadalajara, Mexico; and that she was in the process of doing so in that on January 9, 1980, she sold the real property, the subject of this lawsuit, to Chen C. Wang, on April 3, 1980, she closed escrow on real property located in Palmdale, and on a date unknown made a third sale of other property located in Palmdale. The properties attached consisted of real property at 143 N. Bixel Street and 119 Douglas Street in Los Angeles.

Following the filing of defendant's answer she moved for an order to set aside right to attach order, to quash writ of attachment and to release the attached property. In her supporting declaration dated August 21, 1980, defendant asserted that she resides in Mexico at a given address and currently resides in the Hospital Del Carmen in Guadalajara having entered December 26, 1979; she is suffering from a broken hip, arthritis and general geriatric ailments, and her hospital stay is for an indefinite duration;[1] she is 86 years of age and has never been and is not now engaged in the trade, business or profession of selling real property. In opposition, the declaration of plaintiff's counsel asserted that the proceeds of the sale of real property are being sent directly to defendant in Mexico, defendant is in the process of selling 143 N. Bixel Street and the records of the Los Angeles County Recorder disclose defendant has either sold or is in the process of selling her real property; and the declaration of Frederic Kim alleged that he is a real estate broker and handled negotiations for the sale of the property the subject of this lawsuit, and during negotiations (Sept. 1979) defendant told him she was a real estate broker and intended to dispose and was in the process of disposing of all of her real property and intended to have all proceeds sent directly to her in Mexico. Defendant's application was taken under submission and subsequently denied.

Plaintiff obtained an ex parte right to attach order and order for issuance of writ of attachment on the showing that defendant was a nonresident (§ 492.010, subd. (a)) and he would suffer great and irreparable injury in that there was a danger the property sought to be attached would be sold and made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice. (§ 485.010, Code Civ. Proc.) ■ Nonresident attachment is designed to operate where personal jurisdiction of a defendant cannot be obtained but quasi-in rem jurisdiction can be obtained by seizure of the nonresident's

---

[1]Defendant died on November 5, 1980.

property in the state. (2 Witkin, Cal. Procedure (2d ed., 1981 supp. to vol. 2) Nature and Purpose, § 376A, p. 329.) However, use of the non-resident statute (§ 492.010, Code Civ. Proc.) is limited to its purpose, i.e., to obtain quasi in rem jurisdiction. Thus if the defendant appears, quasi in rem jurisdiction is no longer necessary and the attachment should be made under the ordinary procedures and subject to the ordinary limitations. (2 Witkin, Cal. Procedure (2d ed., 1981 supp. to vol. 2) Motion to Set Aside and Quash, § 380A, p. 332.) Accordingly, section 492.050, subdivision (c) provides that if defendant files a general appearance, the right to attach order must be set aside "unless the plaintiff shows that his right to attach is authorized by a provision other than Section 492.010 [nonresidency]." In brief, the right to attach order must be set aside unless it can be supported by the sections on ordinary attachment; the burden of showing such support is on the plaintiff.

The present procedure for obtaining prejudgment attachment is the final legislative response to *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13] in which the California Supreme Court, invoking the rule of *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], held the original attachment statute violated procedural due process and was unconstitutional. (See *Foraker* v. *O'Brien* (1975) 50 Cal.App.3d 856, 859 [124 Cal.Rptr. 110] [involving 1972 interim statute].) In 1972, to meet the constitutional requirements of *Randone*, the Legislature replaced the attachment law with an interim statute. However, the Legislature directed the Law Revision Commission to continue its study which resulted in a comprehensive revision of the entire statutory attachment procedure, and the interim statute was replaced by the Attachment Law (§ 482.010 et seq., Code Civ. Proc.) effective January 1, 1977. ■ Inasmuch as the attachment procedures are purely the creation of the Legislature, the statute is subject to strict construction. (*Commercial & Farmers Nat. Bk.* v. *Hetrick* (1976) 64 Cal.App.3d 158, 165 [134 Cal.Rptr. 285].)

The present procedure limits the availability of prejudgment attachment to specific types of claims. (§ 483.010, Code Civ. Proc.) There are four restrictions on the kinds of actions in which attachment is authorized. (1) The action must be on a claim for money based on a contract (subd. (a)); (2) the total amount of such claim must be a fixed or readily ascertainable amount not less than $500 (subd. (a)); (3) the claim must not be secured or the security must be valueless (subd. (b)); (4)

"If the action is against an individual, an attachment may be issued only on a claim which arises out of the conduct by the individual of a trade, business, or profession" (subd. (c)). ■ Thus plaintiff was required to show, among other things, that the claim sued upon arose out of the conduct by this individual defendant of a trade, business or profession. Appellant claims that the continuance of the writ of attachment was improper because plaintiff did not make such showing. We agree.

First, as against plaintiff's efforts to establish that on September 24, 1979, defendant was engaged in the conduct of a trade, business or profession, consisting of Kim's declaration asserting that defendant told him during negotiations for the sale that she was a real estate broker and evidence of defendant's disposition of her real properties because of her move to Mexico, is evidence which compels us to hold that the implied finding[2] that plaintiff's claim arises out of the conduct by defendant of the trade, business or profession of selling real estate is unsupported by substantial evidence. It is not the function of this court to reweigh the evidence but we cannot avoid our duty to determine whether the evidence constitutes substantial evidence. "Substantial evidence means more than a mere scintilla; it means 'such relevant evidence as a reasonable man might accept as adequate to support a conclusion.' [Citation.] Improbable conclusions will not be sustained where testimony is at variance with the physical facts and the repugnance is material and self-evident. [Citation.] '[I]f the word "substantial" means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' [Citations.]" (*United Professional Planning, Inc.* v. *Superior Court* (1970) 9 Cal.App.3d 377, 392-393 [88 Cal.Rptr. 551]; *Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757].)

The record before us reveals that defendant and her husband acquired five pieces of real estate between 1944 and 1966, and held them as joint tenants. The property, the subject of the within lawsuit, was purchased by defendant and her husband in 1950 and held in joint tenancy until his death in 1977. At most, the evidence reveals an elderly lady, because of age and physical infirmities many years past the time

---

[2]The trial court in denying the motion to vacate and quash made no findings and gave no reasons for the denial in the minute order.

she would or could have engaged in a trade, business or profession, who acquired real property with her husband 30 to 35 years ago, held it in joint tenancy and became sole owner upon his death in 1977; that in contemplation of moving to Mexico (and perhaps in contemplation of death) she started disposing of her estate in Los Angeles County arranging for the proceeds to be sent directly to her in Mexico; that she negotiated with plaintiff for the sale of the property mentioned in the complaint in September 1979, moved to Guadalajara, sold the subject property to Chen C. Wang on January 9, 1980, and by May 5, 1980, disposed of two other parcels of real property; and that she was 86 years old, hospitalized on December 26, 1979, and died on November 5, 1980. The foregoing evidence inescapably lends credence to her sworn statement (Aug. 1980) that she was not and had never been engaged in the trade, business or profession of selling real estate.

On the other hand, under the undisputed circumstances surrounding the holding and sale by defendant of her real property, the assertion of Frederic Kim in his declaration that in September 1979 defendant told him she was a real estate broker simply is not such evidence as a reasonable man would accept as adequate to support the conclusion that when defendant, at 86 and in very poor health, sold on her own account a piece of her own real property which she had held either alone or as a joint tenant for a good part of her adult life, she was engaged in the "business" of selling real estate. In short, the implied finding is ludicrous. While we cannot, nor do we attempt to reweigh the evidence or redetermine credibility, in the context of the uncontradicted evidence[3] we cannot ignore the unreasonable nature of the averment of Frederic Kim, who incidentally is not wholly disinterested having been named by defendant as a cross-defendant in her cross-complaint and having retaliated by filing against her his cross-cross-complaint; under the circumstances it is not the evidence of "ponderable legal significance" necessary for the substantial proof required here.

Second, the implied finding is not supported by the authorities. This is not the type of activity to which the attachment statute was intended to apply (*Advance Transformer Co. v. Superior Court* (1974) 44 Cal. App.3d 127, 137 [118 Cal.Rptr. 350]); and even accepting Kim's statement that defendant told him she was a real estate broker, all of the

---

[3]We exclude from our consideration defendant's assertion under oath that she was not then and has never been engaged in the trade, business or profession of selling real estate.

evidence points to a sale by her of her own personally held property on her own account and not one that arises out of the business of a real estate broker. (*Shaw, Hooker & Co.* v. *Haisman* (1976) 59 Cal.App.3d 262 [130 Cal.Rptr. 528].)

*Advance Transformer Co.* v. *Superior Court* (1974) 44 Cal.App.3d 127 [118 Cal.Rptr. 350] arose under the interim statute of 1972. The Legislative Committee comment—1976 Amendment—specifically refers to *Advance Transformer Co.* which discusses what is a trade, business or profession; and the Legislature in enacting The Attachment Law did not change the terminology. (See § 483.010, subd. (c), Code Civ. Proc. [claims subject to attachment].) The issue in *Advance Transformer Co.* was whether attachment may be had in an action against an individual guarantor of corporate obligations or an accommodation maker of notes given for business debts. The case holds that the statute limits attachment to situations in which the claim arises out of defendant's conduct of his business (p. 142). In deciding whether defendant guarantor was "engaged in business" the court determined whether the activity "is such as to justify the conclusion that the guarantee of the primary obligor's debt sued upon is part and parcel of an activity which occupies the time, attention and effort of the guarantor for the purpose of livelihood or profit on a continuing basis." (44 Cal.App.3d 144.) In discussing when one is "engaged in business," the court quoted from *Washburn* v. *Commissioner of Internal Revenue* (8th Cir. 1931) 51 F.2d 949, which quoted from *Bedell* v. *Commissioner of Internal Revenue* (2d Cir. 1929) 30 F.2d 622, 624: """A trader on an exchange, who makes a living in buying and selling securities or commodities, may be said to carry on a 'business'; a person who frequents brokers' offices, and continually dabbles in real estate is conceivably quite different. Most men who have capital change their investments, and may speculate all the time; we should hardly call this a business, though the line is undoubtedly hard to draw.""" (44 Cal.App.3d 137.) The court made a distinction between one who spends his attention, time and effort in carrying on an activity for the purpose of livelihood or profit on a continuing basis and one who merely conserves his personal investments. It is difficult on the facts of the instant case to even classify defendant as an investor or as a speculator in real estate or as having "dabbled" in real estate. She and her husband owned the property for almost 30 years and she assumed full ownership of it upon his death. She did no more than sell it and receive the ordinary returns of that ownership. Under *Advance Transformer Co.* she was not engaged in a trade, business or profession of selling real estate.

Even assuming that defendant was a "real estate broker" as claimed by respondent based upon Kim's declaration concerning what she purportedly told Kim, her sale of a personally held real estate parcel that she and her husband had held for 30 years and over, under the circumstances here, cannot be said to arise out of the business of being a broker. The evidence compels the conclusion that the property personally owned by her was sold strictly for her own account. In *Shaw, Hooker & Co.* v. *Haisman* (1976) 59 Cal.App.3d 262 [130 Cal.Rptr. 528], defendant, a securities salesman and employee of plaintiff stockbroker, entered into an agreement with plaintiff authorizing it to act as his agent to purchase and sell "call options" for his own account with plaintiff. After defendant failed to pay the balance due on his account or close out his call option, plaintiff sued for the full amount and secured a writ of attachment. The trial court later quashed the writ finding that defendant was not a person engaged in a trade or business as required by section 537.2, subdivision (c) (interim statute). Relying on *Advance Transformer Co.* v. *Superior Court* (1976) 44 Cal.App.3d 127 [118 Cal.Rptr. 350], the court held that plaintiff's claim against defendant arose not out of defendant's conduct of his trade, business or profession as a securities salesman but rather out of defendant's own account with plaintiff. (P. 267.)

Our conclusion that plaintiff has failed to sustain his burden of showing that the claim upon which the action is based arose out of defendant's conduct of a trade, business or profession renders improper the continuance of the writ of attachment. (§§ 492.050, subd. (c), 483.010, Code Civ. Proc.)

The order is reversed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.