Filed 6/10/25  Northeast Securities Co. v. Que CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NORTHEAST SECURITIES CO., LTD., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> QUE WENBIN et al., <br><br> Defendants and Appellants. | H051832 <br> (Santa Clara County <br> Super. Ct. No. 22CV404456) |

Northeast Securities Co., Ltd. (Northeast) brought an action pursuant to the Uniform Foreign-Country Money Judgments Recognition Act (UFCMJRA) (Code Civ. Proc.,[1] § 1713 et seq.).  Northeast sought recognition of a monetary judgment (civil verdict (2018) Ji Min Chu No. 18) entered by the High People's Court of Jilin Province in the People's Republic of China (the Jilin Court judgment) in favor of Northeast against Que Wenbin (hereafter, Que) and He Xiaolan (hereafter, He).  In connection with this action, Northeast applied under the attachment law (§ 481.010 et seq.) for right to attach orders recognizing its right to levy Que's and He's real and

_____
[1] All further unspecified statutory references are to the Code of Civil Procedure.

personal property in California, including real property located in Palo Alto and Atherton. The trial court issued orders granting Northeast's applications.

Que and He appeal the trial court's orders on jurisdictional and service grounds. In addition, they argue that the court erred in granting the applications because Northeast failed to establish the probable validity of the underlying claim and to meet its burden of demonstrating that the Jilin Court judgment was final, conclusive, and enforceable.

For the reasons stated below, we affirm the challenged orders.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

*A. Facts*

Northeast is a corporation organized under the laws of the People's Republic of China.[3] Que and He are married, and Northeast understood them to be citizens of the People's Republic of China. However, He asserted in a declaration that she is a Canadian citizen, resides in Hong Kong, and has not been in the United States since 2019. Que asserted in his declaration

---

[2] We take these facts from the parties' filings submitted in the trial court in connection with Northeast's complaint and applications for right to attach orders. We recite the essential relevant facts "in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order." (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625.)

[3] Que and He request that this court take judicial notice of a "[c]ertified translation of pertinent part of [Northeast's] 2018 Annual Report" as evidence that Northeast is "organized under laws of, and partially owned by the [Peoples Republic of China]." Because Northeast attests to its organization under the laws of the People's Republic of China in its complaint and because the purported partial ownership of Northeast by the People's Republic of China is not relevant to the issues on appeal, we deny Que's and He's request for judicial notice. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 (*Lockyer*).)

that he is a citizen and resident of Hong Kong and relinquished his assets, including his real estate holdings, namely, the Byron Street, Channing Avenue, and Atherton properties (defined *post*), in the United States in 2012 when he also relinquished his United States green card.[4] Neither Que nor He attached any proof of citizenship or residency to their respective declarations nor does the record contain any other evidence of their asserted citizenship or residency.

At the time Northeast filed its applications for right to attach orders, the Xiaolan He Trust dated May 20, 2016 (Trust), a revocable *inter vivos* trust for which Que and He are trustees, owned two properties in Palo Alto—on Byron Street (the Byron Street property) and Channing Avenue (the Channing Avenue property)—and one in Atherton on Atherton Avenue (the Atherton property).[5]

---

[4] It is not clear from the record if Que submitted to the United States Consulate in Chengdu the statement on relinquishment of United States property that he signed. An attorney at Sichuan Ming Ju law firm attested to witnessing Que sign the statement for submission to the consulate but does not attest to its submission. Nor does the record include any evidence of submission to the consulate. In addition, the page of Que's passport that purports to contain evidence of his relinquishment of his green card is in Chinese, and neither Que, He, nor their counsel has provided a translation of the document.

[5] In April 2023—four months after Northeast last attempted personal service on Que and He at the Byron Street property, three months after Que and He's counsel, Van De Poel, contacted Northeast's counsel to request continuation of the hearing on Northeast's application for right to attach orders, and one month after Northeast asked the trial court to authorize alternative service (discussed in greater detail *post* [pt. II.B.2.])—Que and the Trust each filed papers conveying ownership of the Byron Street property. On April 20, 2023, He recorded with the Santa Clara County Clerk-Recorder's office a trust transfer deed dated April 18, 2023, in which the Trust transferred back to He the ownership of the property located at the

In 2016, Northeast and Que entered into two equity repurchase agreements pursuant to which Que pledged equity in the form of shares of Hengkang Medical Group Co., Ltd. (Hengkang Medical) to Northeast in exchange for 500,000,000 Chinese Renminbi (RMB). Que is the controlling shareholder and legal representative of Hengkang Medical. That year, Northeast also executed a guaranty with He for the repayment of any outstanding amounts owed by Que under the equity repurchase agreements.

Que and He paid Northeast interest on the loan through December 27, 2017. As Que and He acknowledge in their briefing, they did not repay the principal of RMB 500,000,000, nor pay any interest after December 27, 2017.

In 2018, Northeast filed suit in the High People's Court of Jilin Province of the People's Republic of China (High Jilin Court) to recover the principal amount and unpaid interest owed under the equity repurchase agreements and the guaranty. Despite being subpoenaed, Que and He did not submit a written reply or any evidence, and "refused to appear in court," including for cross-examination, "without justifiable reasons." On November 16, 2018, the High Jilin Court entered a judgment for RMB 500,000,000, plus interest and fees, in Northeast's favor against Que and He. The Jilin Court judgment gave Que and He 15 days to file a petition of appeal, but they did not do so.

---

Byron Street address. That same day, Shixi Lin recorded in the San Mateo County Assessor-County Clerk-Recorder's office a deed of trust with assignment of rents dated April 18, 2023, in which He, as trustor, granted Lin, as trustee, the Byron Street, Channing Avenue, and Atherton properties. On April 25, 2023, He recorded with the Santa Clara County Clerk-Recorder's office a quitclaim deed dated April 24, 2023, in which Que conveyed the Byron Street property to He.

On December 2, 2018, the Jilin Court judgment became final. Northeast sought to enforce the judgment and, in 2021, the Intermediate People's Court of Changchun City of Jilin Province (Intermediate Jilin Court) issued an enforcement verdict ((2021) Ji 01 Zhi Hui No. 80). As part of the enforcement proceedings, the Intermediate Jilin Court attempted to auction the Hengkang Medical shares held by Northeast pursuant to the equity repurchase agreements but received no bids. The Intermediate Jilin Court valued the Hengkang Medical shares "at the first failed auction price," transferred ownership of those shares to Northeast, and offset the amount owed Northeast pursuant to the final judgment by the value of those shares. After offsetting the Hengkang Medical shares from the award set forth in the Jilin Court judgment, the total amount Que and He owed Northeast was RMB 294,836,133.74.

Que and He have not paid Northeast the amount due under the Jilin Court judgment.

*B. Procedural Background*

1. <u>Complaint and Applications for Right to Attach Orders</u>

On September 13, 2022, Northeast filed a complaint in the Santa Clara County Superior Court seeking recognition of the Jilin Court judgment under California's UFCMJRA. Northeast attached to the complaint notarized copies of the Jilin Court judgment, the enforcement verdict, and their certified English translations.[6]

---

[6] The notarial certificates attached to the English and Chinese language versions of the Jilin Court judgment and the enforcement verdict were signed by a notary in a notary public office in Jilin Province in the People's Republic of China.

On November 2, 2022, Northeast filed separate applications for a right to attach order and an order for issuance of writ of attachment against He and Que. Northeast sought to attach He's and Que's property, including the Byron Street, Channing Avenue,[7] and Atherton properties. In support of the applications, Northeast submitted the declaration of its counsel, Rongping Wu, which described the proceedings in the High Jilin Court, the Jilin Court judgment, and the enforcement verdict; set forth Que's and He's ownership of property in California; and stated that the sole purpose for the applications was to preserve Northeast's ability to obtain relief and to recover on its claim against Que and He. Wu attached to his declaration copies of the Jilin Court judgment and the enforcement verdict in Chinese and in English, with accompanying translator's affidavits.[8]

On November 29, 2023, Que and He filed their opposition to Northeast's applications for right to attach orders. Que and He argued that Northeast did not properly serve the documents on them because it was required to comply with the Hague Service Convention but did not do so. They also asserted that the trial court did not have personal jurisdiction over them. In addition, without explicitly citing the UFCMJRA, they asserted that one of the mandatory grounds and five discretionary grounds for nonrecognition of a foreign judgment applied. They focused their arguments

---

[7] The application in the record appears to refer to the street as "Charming Ave." The memorandum in support of the application refers to the street as "Channing Ave." We presume that the spelling in the application is a typographical error and that Northeast intended to refer to "Channing Ave." in Palo Alto.

[8] The translator's affidavits, signed by I No Wu on April 27, 2022, in New York, were notarized by a notary public who made handwritten changes to the city and day of their signature. The handwritten changes appear to be the same on both notary's statements.

6

on purported "defects in the service process" in the proceedings before the High Jilin Court but pointed to no evidence in the record or legal authority to support their assertions. Que also maintained that he relinquished his assets in the United States as well as his United States green card in 2012, and that the real property in Northeast's applications "simply does not belong to" him.

2. Service Attempts

Northeast acknowledged that Que and He maintained a residence on Renmin South Road in Sichuan Province in the People's Republic of China but asserted that Que and He also maintained a residence in Palo Alto. The Jilin Court judgment (issued in November 2018) listed the Renmin South Road address for Que and He. Before Northeast filed the complaint in September 2022, Northeast determined that Que and He "were domiciled at a residential address" in Palo Alto—the Byron Street property—by reviewing publicly available land records. Deeds for the Byron Street property listed He as the owner of the property, directly and "indirect[ly] through a trust."

Northeast engaged first Janney & Janney Legal Support Service (Janney) and, later, Nationwide Legal Services (Nationwide) to personally serve Que and He with the summons and complaint at the Byron Street property. Janney attempted service five times between October 17, 2022, and November 1, 2022. Janney spoke with a house sitter at the Byron Street property on October 17, 2022, and, on October 25, 2022, a neighbor across the street, and both times confirmed that Que and He lived at the Byron Street property but were "currently out of town." Janney was unable to personally serve Que and He with the summons and complaint.

After Northeast filed its applications for right to attach orders, Nationwide attempted service of the summons, complaint, and the applications at the Byron Street property on December 16, 17, and 21, 2022.

7

Nationwide observed that mail was being delivered to the Byron Street address, the mailbox was full, and He's and Que's names were not on the letters inside the mailbox.

On January 3, 2023, Que's and He's counsel, Hua Jiang at Van De Poel, Levy, Thomas LLP (Van De Poel), e-mailed Northeast's counsel, Brett Ramsaur at Ramsaur Law (Ramsaur), requesting continuation of the attachment hearing then scheduled for February 2023. On January 6, 2023, Ramsaur inquired by e-mail whether Van De Poel would accept service of process on behalf of Que and He. Van De Poel did not reply.

On January 9, 2023, the parties spoke by telephone and Ramsaur e-mailed Van De Poel a copy of the complaint. Van De Poel did not reply.

On January 11, 2023, Ramsaur sent a follow-up e-mail to Van De Poel asking if it would accept service on behalf of Que and He. Van De Poel did not reply until January 17, 2023, when it informed Ramsaur that it did not have permission to accept service on behalf of Que and He.

On January 13 and 15, 2023, Nationwide again attempted personal service on Que and He at the Byron Street property but was unsuccessful. Nationwide noted that, during the attempted service on January 13, 2023, there was a vehicle in the driveway. No vehicles were present on the driveway during the attempt on January 15, 2023.

On March 10, 2023, Northeast sought authorization from the trial court to effectuate alternative service upon Que and He under section 413.30.[9]

---

[9] On May 18, 2023, the trial court conducted a hearing on Northeast's applications for attachment orders, noted Que and He had not been served yet with the complaint and summons and Northeast had requested service by publication, and requested briefing on the court's authority to allow service by publication. The hearing was not reported. The record does not contain

Northeast detailed its attempts to personally serve Que and He as well as its communications with Van De Poel. Northeast stated that it was "not confident that [Que and He] can be physically located for purposes of effectuating personal service."

On August 17, 2023, the trial court granted Northeast's motion and authorized it to serve Que and He with the summons and complaint either through certified mail at the Byron Street property or through mail to Van De Poel as their known counsel in California. On August 25, 2023, Northeast's counsel in New York served Que and He by mail with the summons, complaint, and applications for right to attach both at the Byron Street property and through Van De Poel at their address in California, in accordance with the trial court's order. In addition, Northeast concurrently served the documents via e-mail to Que and He through Van De Poel.[10]

---

any briefing submitted by the parties in response to the court's request during the May 18, 2023 hearing. Northeast does not contend that it served the complaint, summons, and attachment by publication, and the record does not contain any evidence of service by publication.

[10] On September 29, 2023, Que and He moved to quash service of the summons, complaint, and applications and to dismiss. They argued that Northeast did not properly serve the documents on them because it was required to comply with the Hague Service Convention but did not do so. In addition, they asserted that the court did not have personal jurisdiction over them. Northeast opposed Que's and He's motion. The register of actions in the record indicates that the trial court conducted a hearing on the motion to quash on January 25, 2024, but the record does not include a minute order or order on Que's and He's motion to quash.

Que and He request that this court take judicial notice of a tentative ruling, minute order, order taking the motion to quash off calendar, and notice of transfer of the motion to quash as evidence of the lack of a substantive ruling on their motion to quash. Because we decide that Que's and He's motion to quash is not relevant to the issues on appeal, we deny their request for judicial notice. (*Lockyer*, *supra*, 24 Cal.4th at p. 422, fn. 2.)

3. Hearing on the Applications for Right to Attach Orders; Orders; Appeal

On December 6, 2023, the trial court conducted a hearing on Northeast's applications for right to attach orders and orders for issuance of writ of attachment after hearing.[11]  On December 12, 2023, the court filed orders granting Northeast's applications for right to attach orders and orders for issuance of writ of attachment after hearing against Que and He.  The

_____

Similarly, Northeast filed a request for judicial notice of Que's and He's memorandum of points and authorities in support of their motion to quash in a related case (case No. 23CV420300) before a different bench officer and that court's August 5, 2024 order on the motion as evidence that Que's and He's arguments regarding service and jurisdiction in this case are "meritless." Because, as Northeast acknowledges, neither document was presented to the trial court in this case, they are not appropriate for consideration on appeal. (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1306–1307 (*Glassman*); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons*).)  Moreover, Northeast does not assert in their request that the order in case No. 23CV420300 is based on the same record and facts presented to the trial court in the instant matter.  We deny Northeast's request.

Que and He also request that we take judicial notice of—or, in the alternative, augment the record with—a declaration Northeast's counsel, Rongping Wu, filed in support of an "ex parte application" for attachment. Que and He assert that the subject declaration is substantively the same as another declaration filed by Wu in support of Northeast's applications, except that it does not include paragraphs addressing He's ownership of property. Northeast opposes Que's and He's request on the grounds that it was untimely and filed after Northeast had already filed its respondent's brief but does not assert any prejudice.  We grant Que's and He's request to augment the record with Wu's declaration.

[11] Although the orders and the register of actions indicate that the trial court held a hearing on Northeast's applications for right to attach, and the register of actions indicates that the court issued a minute order, the record before us does not contain a copy of any minute order for the hearing or a reporter's transcript of the hearing.  It is not clear from the record if the December 6, 2023 hearing was reported.

court made the following findings, among others: (1) "[t]he claim upon which the application is based is one upon which an attachment may be issued"; (2) Northeast "established the probable validity of [such] claim"; and (3) Que and He failed to prove that the property described in Northeast's application is exempt from attachment. The court concluded that Northeast has the right to attach He's and Que's property in the amount of $43,834,659.07. The court ordered the clerk to issue a writ of attachment for He's property, including the Byron Street, Channing Avenue, and Atherton properties, and Que's property.

On January 31, 2024, Que and He filed a notice of appeal appealing the right to attach orders pursuant to section 904.1, subdivision (a)(5).

## II. DISCUSSION

Que and He argue that the trial court erred in granting the right to attach orders because Northeast failed to carry its burden of demonstrating (1) the probable validity of the judgment, and (2) that the judgment is final, conclusive, and enforceable. They base this argument on their contentions that (1) the translation certifications do not comply with California law because they were neither properly sworn and " 'certified under oath' " nor "certified or declared under penalty of perjury to be *true* translations"; and (2) one of the discretionary nonrecognition grounds applies because Northeast failed to properly serve Que and He with documents in the underlying action in the High Jilin Court and, thus, did not provide them with "sufficient time . . . to defend" against the action (§ 1716, subd. (c)(1)(A)).

In the alternative, Que and He assert that the trial court erred in granting Northeast's applications because Northeast did not properly serve the summons, complaint, and applications on them. They argue that the Hague Service Convention applies, and Northeast did not serve the

11

documents in compliance with the Convention. Que and He also maintain that the court had no jurisdiction over them because they are not domiciled in California, and Northeast's claim does not arise out of or have substantial contact with California.

Northeast asserts that Que and He forfeited their objections to the translations of the documents by failing to raise the challenge in the trial court and, alternatively, that any error in admitting the documents was harmless as Que and He do not identify any errors in the translation. In addition, Northeast argues that the trial court did not abuse its discretion in authorizing alternate service on Que and He because the Hague Service Convention did not apply since Que and He have an address in California. Northeast contends that the court had quasi in rem jurisdiction arising out of its applications for right to attach orders and Que's and He's ownership of property in California. Northeast maintains that substantial evidence in the records supports the court's finding that Northeast established the probable validity of its claim for foreign judgment recognition.

*A. Standards of Appellate Review*

Well-established principles of appellate review guide our analysis. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609, citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) As the appellants, Que and He bear the burden of showing that the trial court committed an error that justifies reversal of the orders. (*Jameson*, at p. 609.)

12

"To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*).)  When an appellant asserts a point on appeal " 'but fails to support it with reasoned argument and citations to authority' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862) or fails to support it with appropriate record citations (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887 (*Fink*); Cal. Rules of Court, rule 8.204(a)(1)(C) [requiring parties to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]), this court may treat the point as forfeited.  We are not required to search the record for error ourselves (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246), and "[w]e are not bound to develop appellants' arguments for them." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)  In short, "conclusory claims of error will fail." (*S.C.*, at p. 408.)

*B. Jurisdiction*

"[T]he jurisdiction of the court in a proceeding in attachment is wholly independent of the jurisdiction acquired by the service or publication of the summons." (*Root v. Superior Court* (1962) 209 Cal.App.2d 242, 247 (*Root*).)

The attachment law states that "an attachment may be issued in any action for the recovery of money brought against" (§ 492.010) "[a] natural person who does not reside in this state." (*Id.*, subd. (a).)  "Nonresident attachment is designed to operate where personal jurisdiction of a defendant cannot be obtained but quasi in rem jurisdiction can be obtained by seizure of the nonresident's property in the state." (*Nakasone v. Randall* (1982) 129 Cal.App.3d 757, 760–761 (*Nakasone*); see also *Root, supra*, 209 Cal.App.2d at p. 247.)  As the United States Supreme Court noted, "when claims to the

13

property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest. The State's strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State." (*Shaffer v. Heitner* (1977) 433 U.S. 186, 207–208, fns. omitted.)

"[U]se of the nonresident statute[, section 492.010,] is limited to its purpose, i.e., to obtain quasi in rem jurisdiction." (*Nakasone, supra*, 129 Cal.App.3d at p. 761.) "If the defendant has filed a general appearance in the action, the right to attach order shall be set aside unless the plaintiff shows that his right to attach is authorized by a provision other than [s]ection 492.010." (§ 492.050, subd. (c).)

Que and He assert that they are not residents of California. The evidence in the record before us indicates that they own property in the state,[12] and He admits in appellate briefing to having an ownership interest in at least the Byron Street property. As such, the trial court had quasi in

---

[12] Que and He argue that the Byron Street, Channing Avenue, and Atherton properties are not Que's property, but He's alone because they are not subject to California's community property laws, having married in China and having not domiciled in California. Que and He do not cite to any evidence in the record or to any legal authority to support their assertions. We thus treat this argument as forfeited. (*S.C., supra*, 138 Cal.App.4th at p. 408.)

14

rem jurisdiction over Que and He. (§ 492.010, subd. (a); *Nakasone, supra*, 129 Cal.App.3d at pp. 760–761.)

As Que and He themselves state in their motion to quash service of the summons, complaint, and applications and their opposition to Northeast's applications for right to attach orders, they "specially appear[ed] to contest service and jurisdiction" and did not make a general appearance. (See *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8 ["A California defendant can preserve objections to personal jurisdiction only by making a *special* appearance, i.e., an appearance for the *sole* purpose of objecting to the court's jurisdiction. [Citation.] A special appearance does not confer jurisdiction on the court for any purpose other than determining the question of jurisdiction over the person."]; see also *Sunrise Financial, LLC v. Superior Court* (2019) 32 Cal.App.5th 114, 125 [" '[I]f an appearance is for any purpose other than to question the jurisdiction of the court[,] it is general.' "].) Since Que and He did not make a general appearance in the trial court, the court retained quasi in rem jurisdiction over each of them pursuant to section 492.010.

*C. Service*

1. <u>Legal Principles</u>

The Hague Service Convention applies " 'where there is occasion to transmit a judicial or extrajudicial document for service abroad.' " (*Yamaha Motor Co., Ltd. v. Superior Court* (2009) 174 Cal.App.4th 264, 270, fn. 4, citing Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 1, 20 U.S.T. 361, T.I.A.S. No. 6638 (eff. Feb. 10, 1969).) However, it "shall not apply where the address of the person to be served with the document is not known." (*Yamaha Motor Co.*, at p. 270, fn. 4; see also *In re R.L.* (2016) 4 Cal.App.5th 125, 147 (*R.L.*).)

15

Our courts have added a reasonable diligence requirement, holding that "[t]he Hague Service Convention does not apply where the address of the person to be served is not known and the plaintiff has exercised reasonable diligence to ascertain that person's whereabouts." (*R.L.*, *supra*, 4 Cal.App.5th at pp. 147–148; *Buchanan v. Soto* (2015) 241 Cal.App.4th 1353, 1366; *People v. Mendocino County Assessor's Parcel No. 056-500-09* (1997) 58 Cal.App.4th 120, 125.) " 'A number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location, are generally sufficient. These are likely sources of information, and consequently must be searched before resorting to service by publication.' " (*Kott v. Superior Court* (1996) 45 Cal.App.4th 1126, 1137.) "However, the showing of diligence in a given case must rest on its own facts and '[n]o single formula nor mode of search can be said to constitute due diligence in every case.' " (*Id.* at pp. 1137–1138; *Lebel v. Mai* (2012) 210 Cal.App.4th 1154, 1162 [noting there is "[n]o bright-line rule or singular test [for] . . . identifying or quantifying what good faith efforts would amount to a proper showing of reasonable diligence"].) The "determination of reasonable diligence is 'a factual inquiry appropriately left to resolution in the trial court.' " (*R.L.*, *supra*, 4 Cal.App.5th at p. 147.)

2. Analysis

We may infer from the trial court's order granting Northeast the right to serve the summons, complaint, and applications on Que and He by alternative service that it found Northeast had been reasonably diligent in its efforts to locate Que and He for purposes of service. Because the determination of Northeast's (1) knowledge of Que's and He's address and (2)

16

reasonable diligence in ascertaining their address, are both factual questions, we review the record for substantial evidence to support the court's implied finding that Northeast's service of the applications for attachment was proper.

The Jilin Court judgment issued in 2018, indicated that Que and He were domiciled at an address on Renmin South Road in Sichuan Province. However, the judgment also noted that Que and He failed to appear in court or submit a written reply to Northeast's complaint, failed to submit evidence or appear in court for cross-examination, and failed to appear at the public hearing in response to a subpoena.

Four years later, in 2022, when Northeast was prepared to file the complaint seeking recognition of the Jilin Court judgment, Northeast's counsel, Wu, reviewed publicly available land records[13] and determined that He owned the Byron Street, Channing Avenue, and Atherton properties. Northeast's first process server, Janney, attempted personal service of the summons and complaint at the Byron Street property starting on October 17, 2022. During this first attempt, the process server spoke with a house sitter at the Byron Street property, who confirmed that Que and He lived there but were "currently out of town." During another attempt in October, a neighbor confirmed that Que and He lived at the Byron Street property. Janney attempted service at the Byron Street property four more times without success.

---

[13] It is not clear from the record whether Northeast's search of publicly available land records included Hong Kong, where Que and He allege they reside. Que and He do not challenge on appeal the scope of Northeast's land records search. The record does not contain any evidence that a search of publicly available land records would have included among its results Que's and He's purported Hong Kong residence.

After Northeast filed its applications, its second process server, Nationwide, attempted service of the summons, complaint, and applications on Que and He at the Byron Street property five times, but observed that the mailbox at the property was full, and He's and Que's names were not on the letters inside.

When Van De Poel identified itself as counsel for Que and He, Northeast's counsel, Ramsaur, asked Van De Poel twice whether it would be willing to accept service on its clients' behalf before Van De Poel informed Ramsaur that it did not have permission from Que and He to accept service on their behalf.

After these efforts failed, Northeast sought authorization from the trial court for alternative service on Que and He, stating that it was "not confident" that it could "physically locate[]" them "for purposes of effectuating personal service."

Although Que and He assert that they both reside in Hong Kong and Northeast is aware of the location of their residence there, they do not cite to any evidence in the record to support either assertion.

Northeast's counsel investigated publicly available land records, Northeast's process servers spoke with a house sitter and a neighbor but were unsuccessful in their multiple service attempts, and Northeast sought—also unsuccessfully—to effect service through Que's and He's counsel.  It was only after these efforts over the course of several months that Northeast sought authorization for alternative service, acknowledging that it did not know where it could physically locate Que and He for purposes of service.

We decide substantial evidence supports the trial court's implied finding that Northeast could not ascertain Que's and He's address for service of process despite reasonable diligence.  We will not disturb the court's

18

finding, which in turn leads to the conclusion that the Hague Service Convention (which governs service abroad) did not apply. (See *R.L.*, *supra*, 4 Cal.App.5th at pp. 147–148 ["The Hague Service Convention does not apply where the address of the person to be served is not known and the plaintiff has exercised reasonable diligence to ascertain that person's whereabouts."].) Appellants have not demonstrated error in the trial court's conclusion that Que and He were properly served with the summons, complaint, and applications for right to attach orders.

### D. Attachment

#### 1. <u>Applicable Law</u>

##### a. The Attachment Law

" ' " 'Attachment is an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property in advance of trial and judgment.' " ' " (*Rreef America Reit II Corp, YYYY v. Samsara Inc.* (2023) 91 Cal.App.5th 609, 616–617 (*Rreef*); *Royals v. Lu* (2022) 81 Cal.App.5th 328, 345 (*Royals*).) Under the attachment law, a plaintiff may, "[u]pon the filing of the complaint or at any time thereafter . . . apply . . . for a right to attach order and a writ of attachment by filing an application for the order and writ with the court in which the action is brought." (§ 484.010.) An application for a right to attach order must "be supported by an affidavit showing that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based." (§ 484.030.) Such affidavit must state facts with particularity. (§ 482.040.)

Section 483.010, subdivision (a) states that, "[e]xcept as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily

ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees." (See also *Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845, 853 (*Goldstein*).) "If the action is against a defendant who is a natural person, an attachment may be issued only on a claim which arises out of the conduct by the defendant of a trade, business, or profession." (§ 483.010, subd. (c).)

Section 484.090, subdivision (a) provides that the trial court "shall issue a right to attach order . . . if it finds all of the following:  [¶]  (1) The claim upon which the attachment is based is one upon which an attachment may be issued.  [¶]  (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.  [¶]  (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.  [¶]  (4) The amount to be secured by the attachment is greater than zero." (See also *Loeb & Loeb v. Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1118 (*Loeb*).)  In addition, if "the court finds that the defendant has failed to prove that all the property sought to be attached is exempt from attachment, it shall order a writ of attachment to be issued upon the filing of an undertaking." (§ 484.090, subd. (b).)

"A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (§ 481.190; *Royals, supra*, 81 Cal.App.5th at p. 345; *Loeb, supra*, 166 Cal.App.3d at p. 1118.)  "The plaintiff has the burden of establishing the probable validity of the claim upon which the attachment is based." (*Rreef, supra*, 91 Cal.App.5th at p. 617; *Bank of America v. Salinas Nissan, Inc.* (1989) 207 Cal.App.3d 260, 271 (*Salinas Nissan*).)  If the defendant contests the application, "the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome

20

of the litigation." (*Loeb*, at p. 1120.)  The trial court's findings "shall be made upon the basis of the pleadings and other papers in the record."  (§ 484.090, subd. (d); *Salinas Nissan*, at p. 273.)

        b.  Uniform Foreign-Country Money Judgments Recognition Act

Northeast brought its applications for right to attach orders in reliance on its claim under the UFCMJRA.  The act "applies to a foreign-country judgment to the extent that the judgment both:  [¶]  (1) Grants or denies recovery of a sum of money.  [¶]  (2) Under the law of the foreign country where rendered, is final, conclusive, and enforceable."[14]  (§ 1715, subd. (a).)

The party seeking recognition of a foreign judgment bears the burden of proving that the judgment satisfies the requirements for recognition. (§ 1715, subd. (c).)  If the party seeking such recognition meets its burden, the burden shifts to the party opposing recognition to establish that one of the mandatory grounds for nonrecognition enumerated in section 1716, subdivision (b), or one of the discretionary grounds for nonrecognition in section 1716, subdivision (c), applies.  (§ 1716, subd. (e); see also *Naoko Ohno v. Yuko Yasuma* (9th Cir. 2013) 723 F.3d 984, 991 ["Once coverage under the [] Act is established, the presumption in favor of enforcement applies, and the

---

    [14] "The official comment [for this provision] states:  'In order to come within the scope of this Act, a foreign-country judgment must be final, conclusive, and enforceable under the law of the foreign country in which it was rendered.  This requirement contains three distinct, although inter-related concepts.  A judgment is final when it is not subject to additional proceedings in the rendering court other than execution.  A judgment is conclusive when it is given effect between the parties as a determination of their legal rights and obligations.  A judgment is enforceable when the legal procedures of the state to ensure that the judgment debtor complies with the judgment are available to the judgment creditor to assist in collection of the judgment.' " (*Manco Contracting Co. (W.L.L.) v. Bezdikian* (2008) 45 Cal.4th 192, 214, italics omitted (conc. & dis. opn. of Kennard, J.).)

party resisting recognition of a foreign-country judgment 'has the burden of establishing that a ground for nonrecognition . . . exists.' "].) "Notwithstanding an applicable ground for nonrecognition under paragraph [(c)](1), the court may nonetheless recognize a foreign-country judgment if the party seeking recognition of the judgment demonstrates good reason to recognize the judgment that outweighs the ground for nonrecognition." (§ 1716, subd. (c)(2).)

### 2. Standard of Review

"A trial court's factual findings in an attachment proceeding, including its probable validity finding, are subject to our substantial evidence standard of review. [Citations.] 'We review the evidence on appeal in favor of the prevailing party, resolving conflicts and drawing reasonable inferences in support of the judgment.' [Citations.] '[W]e cannot substitute our inferences for those of the trial court reasonably grounded on substantial evidence.' " (*Pech v. Morgan* (2021) 61 Cal.App.5th 841, 855; *Salinas Nissan, supra*, 207 Cal.App.3d at p. 273; *Chino Commercial Bank, N.A. v. Peters* (2010) 190 Cal.App.4th 1163, 1169–1170 (*Peters*).)

"We will not disturb a determination upon controverted facts unless no substantial evidence supports the court's determination." (*Goldstein, supra*, 164 Cal.App.4th at p. 853; see also *Park v. NMSI, Inc.* (2023) 96 Cal.App.5th 346, 354 (*Park*); *Peters, supra*, 190 Cal.App.4th at p. 1169 [" 'If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.' "].) " 'However, where there are no contested issues of fact, the issue becomes one of law subject to de novo review.' " (*Park*, at p. 354; *Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 163.)

3. <u>Analysis</u>

He and Que challenge on two grounds the trial court's finding that Northeast established the probable validity of its claim for recognition of the Jilin Court judgment:  (1) the translation certifications were neither properly sworn and certified nor declared to be "*true* translations"; and (2) improper service in the High Jilin Court action left Que and He without "sufficient time . . . to defend" against the action (§ 1716, subd. (c)(1)(A)).

Que and He forfeited their argument based on the translation certificates by failing to raise it in the trial court.  (See *Park, supra*, 96 Cal.App.5th at pp. 358–359 [concluding that an argument in an attachment proceeding could not be considered on appeal where it was not raised in the trial court]; see also *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 68; *Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1127.) We therefore do not consider it further.

As to their second argument, Que and He request that this court take judicial notice of an English version of civil procedure code sections from the People's Republic of China and the certified translation of "relevant records" from the High Jilin Court in connection with the Jilin Court judgment, because they support Que's and He's argument that they were not properly served in the underlying High Jilin Court action.  There is no indication in the record that these documents were before the trial court when it issued the right to attach orders.  Because the civil procedure code sections and High Jilin Court records included in Que's and He's request for judicial notice were not presented to the trial court, they generally may not be considered on appeal.  (*Glassman, supra*, 90 Cal.App.5th at pp. 1306–1307; *Vons, supra*, 14 Cal.4th at p. 444, fn. 3.)  Que and He have not presented any exceptional

23

circumstances here that would justify deviation from that general principle. (*Vons*, at p. 444, fn. 3.)

We acknowledge that foreign law is "arguably . . . subject to permissive judicial notice under Evidence Code section 452, subdivision (f)." (*Mireskandari v. Gallagher* (2020) 59 Cal.App.5th 346, 359.) However, foreign law is "of no assistance to us without 'the advice of persons learned in the subject matter' " and Que and He have not presented any expert opinion on the proffered procedural law of the People's Republic of China. (*Ibid.*, citing Evid. Code, § 454, subd. (a)(1); see also Evid. Code, § 454, subd. (b) ["Where the subject of judicial notice is the law of . . . a foreign nation . . . and the court resorts to the advice of persons learned in the subject matter, such advice, if not received in open court, shall be in writing."]; compare *In re Eng's Estate* (1964) 228 Cal.App.2d 160, 167–168 [declining to take judicial notice of foreign law where the proffered law had not been authenticated] with *In re Marriage of V.S. & V.K.* (2023) 97 Cal.App.5th 219, 223 [taking judicial notice of Indian law where the parties presented expert testimony "from attorneys licensed in India who had experience litigating" issues arising under the proffered law].)

For the foregoing reasons, we deny Que's and He's request for judicial notice of these documents. Because Que and He rely exclusively on these documents as evidence supporting their assertion that documents in the High Jilin Court action were not properly served on them and fail to support their argument with citations to admitted evidence in the record, we decide that their argument is forfeited. (*S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Fink*, *supra*, 25 Cal.3d at p. 887.)

Moreover, substantial evidence in the record supports the trial court's finding that Northeast established the probable validity of its claim upon

which the attachment is based, namely, the request for recognition of the Jilin Court judgment. The Jilin Court judgment granted Northeast a recovery of a sum of money owed it by Que and He, was rendered final when Que and He did not appeal it within 15 days, took legal effect and thus was rendered conclusive, and was enforceable in accordance with the enforcement verdict entered by the Intermediate Jilin Court. Que and He do not dispute the contents of the Jilin Court judgment or the enforcement order. Indeed, they acknowledge in their appellate briefing that the Jilin Court issued a final judgment on November 16, 2018, for money damages in the amount of RMB 506,765,350, and the Intermediate People's Court issued an enforcement verdict on August 23, 2021.

Substantial evidence thus supports the trial court's finding of probable validity because the Jilin Court judgment granted recovery of a sum of money and was final, conclusive, and enforceable. (§ 1715, subd. (a).) We conclude that the trial court did not err in granting Northeast's applications for right to attach orders.

## III. DISPOSITION

The December 12, 2023 right to attach orders are affirmed. Respondent is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Danner, Acting P. J.

WE CONCUR:

_____
Lie, J.

_____
Wilson, J.

H051832
*Northeast Securities Co Ltd v. Que et al.*